E. Lessesne, Síndico, Etc., demandante y apelante, *v.* Porto Rico Drug Co. Retail y José de Jesús, Etc., demandados y apelados.

No. 4390.—*Sometido:* Junio 10, 1929. *Resuelto:* Julio 16, 1929.

*J. H. Brown, C. Ruiz Nazario* y *G. E. González,* abogados del apelante; *Feliú & La Costa* y *Monserrat & Monserrat,* abogados de las interventoras Serra Garabís & Co., Inc. e Iglesias & Co. Inc., respectivamente.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata de un recurso de apelación interpuesto contra una orden concediendo permiso a ciertos acreedores para intervenir en un pleito pendiente ante la Corte de Distrito de San Juan y también anulando un embargo. La demanda necesaria para dar a la corte jurisdicción sobre las partes y sobre el asunto en controversia, fué omitida en los autos. De la orden de la corte aparece que se trabó un embargo para asegurar la efectividad de la sentencia. La transcripción de autos no revela, a no ser por deducción, la naturaleza de dicho embargo. Es cierto que las mociones de intervención, tienden a demostrar que se embargó cierto crédito, pero la naturaleza exacta de este crédito o el carácter exacto del gravamen adquirido no aparece del verdadero récord. Teniendo ciertas dudas respecto a si teníamos ante nosotros un récord suficiente, ordenamos una vista sobre esta cuestión. El apelante insistió entonces en que la corte tenía ante sí un récord suficiente. A indicación del juez que

suscribe, el letrado del apelante dijo que traería las correspondientes copias de aquellas partes de los autos que se suponía faltaban si la corte le ordenaba o lo solicitaba. La corte en pleno es de opinión que en un pleito civil el tribunal no debe ordenar o solicitar del apelante que eleve documentos adicionales.

■ Aunque la mayoría de esta corte cree lo contrario, el Juez Asociado Sr. Texidor y el que suscribe son de opinión que el caso debe ser desestimado por no tener un récord suficiente. En general, dichos jueces disidentes creen que las cuestiones que deben demostrar la jurisdicción de la corte inferior deben aparecer positivamente del legajo de la sentencia. Igualmente, que en él debe aparecer que la corte adquirió jurisdicción sobre la cosa objeto del embargo, o sea el supuesto crédito. Fué mientras el juez que suscribe investigaba la naturaleza del gravamen que se alegaba había sido adquirido, cuando trató de ver dónde estaban los documentos relativos al embargo y nada halló. De igual modo, posteriormente surgió la cuestión relativa a si el demandante era un simple acreedor por concepto de un contrato o qué. Todos los procedimientos principales podrían demostrar algo que justificara la actuación de la corte al anular el embargo. Es cierto que en su alegato el apelante dice que es un simple acreedor por concepto de un contrato, pero ese hecho esencial no aparece de los propios autos. El apelante en su alegato repetidamente sostiene que los alegados interventores no tienen derecho alguno en el pleito por él instituído contra la demandada, excepto quizás si se adquiere un gravamen sobre los fondos. En otras palabras, que el apelante tiene una controversia particular con la demandada, y sin embargo, a no ser por una inferencia general, no se demuestra cuál es el caso entre las partes originales. Ni siquiera aparece claramente la identidad del demandante. Los autos en su totalidad podrían revelar la falta de jurisdicción o la falta de una causa de acción en el demandante. Es innecesario entrar más

a fondo en las razones para esta regla, toda vez que tenemos lo que dichos jueces disidentes creen es un estatuto imperativo sobre la materia. El artículo 299 del Código de Enjuiciamiento Civil, según fué enmendado por la Ley No. 81 de 1919, exige que el legajo de la sentencia sea elevado en todos los casos. Si hay transcripción de la evidencia, tal transcripción puede acompañarse al legajo de la sentencia. En todos los demás casos, así dice el artículo, el legajo de la sentencia debe elevarse, desde luego, con la evidencia incorporada al mismo. El artículo 233 del Código de Enjuiciamiento Civil define qué es el legajo de la sentencia, y necesariamente incluye las alegaciones o procedimientos que faltan. Todas estas consideraciones tal vez se hubieran podido evitar, si, como sugirió el juez que suscribe durante la vista, el apelante, aunque mantuviera su posición, hubiese solicitado permiso para radicar una copia de la demanda y una copia de la orden de embargo.

La mayoría del tribunal cree que la jurisdicción de la corte inferior puede asumirse, y que de conformidad con los hechos y circunstancias que se desarrollarán en el curso de esta opinión tenemos un récord suficiente ante nos. No obstante, como el caso puede ser apelado, la corte concederá al demandante y apelante permiso para unir a los autos el legajo de la sentencia, según fué preparado en la corte inferior, si así lo cree prudente.

Habiendo la corte aceptado la jurisdicción, los citados jueces disidentes, al igual que en otros casos (véase *Domínguez* v. *Fabián*, 35 D.P.R. 314 y 36 D.P.R. 32) tomarán parte en la resolución final de este caso.

El apelante insiste principalmente en que los apelados no tenían derecho a intervenir. Los hechos que se desprenden de los autos (y con tal objeto hemos seguido mayormente el alegato del apelante) son como sigue: Que a instancias del demandante-apelante, la Corte de Distrito de San Juan ordenó se practicara un embargo para asegurar la efectividad

de la sentencia; que el embargo fué librado contra un crédito perteneciente a la demandada, que es una corporación, y que dicho crédito estaba en manos de la citada demandada. Los apelados mediante moción solicitaron permiso para intervenir, y a la vez pidieron que el embargo fuese anulado. La teoría de las mociones de intervención era que la corporación demandada estaba en liquidación, y que de conformidad con la ley de corporaciones vigentes en Puerto Rico, todos los bienes de dicha corporación constituían un fondo a favor de los acreedores. La Corte resolvió ambas cuestiones a favor de los apelados y anuló el embargo. El apelante había radicado una oposición en que niega la mayoría de las alegaciones importantes de las mociones. Los hechos presentados como prueba de las mociones ante la corte inferior lo fueron mediante estipulación que fué aprobada por la corte, siendo expresamente la intención que ésta ocupara el lugar de una exposición del caso.

Los apelados probaron que ellos eran acreedores comunes de la demandada. La prueba más importante, desde el punto de vista de los apelados, fué una certificación expedida por el Secretario Ejecutivo de Puerto Rico, demostrativa del consentimiento unánime de los accionistas para que se disolviera la corporación demandada. Los liquidadores enviaron el aviso correspondiente a todos los acreedores pidiéndole que presentaran sus reclamaciones. Por otra parte, se demostró que nunca se instituyó procedimiento judicial alguno tendente a disolver la corporación.

Convenimos con el apelante en que los apelados no demostraron derecho alguno a intervenir en este litigio privado entre el demandante y la demandada. Mediante el embargo, según lo aceptó la Corte de Distrito y según lo acepta esta Corte, el demandante ordinariamente hubiera adquirido un gravamen sobre la propiedad de la demandada. Los apelados, sin demostrar que tienen algún gravamen o derecho, tratan de intervenir en este litigio privado por medio de una

simple moción. No demuestran que tengan alguna sentencia o algún gravamen adquirido a virtud de un procedimiento judicial o aún que mediante contrato o en alguna otra forma tengan un derecho preferente al supuesto fondo en cuestión. Según el artículo 72 del Código de Enjuiciamiento Civil, para que una persona pueda intervenir en un pleito debe tener algún interés en el asunto en litigio. Esto generalmente significa, interés en el asunto del litigio mismo. El juez que suscribe llama la atención a la importancia de las palabras ''asunto en litigio'' para los fines de su disentimiento anterior. El embargo no es el asunto en litigio. Otros procedimientos como ''tercerías'' son concedidos por la ley a los acreedores si desean alegar un derecho preferente sobre bienes embargados. Citas pertinentes son: *Brown* v. *Saul,* 4 Mart. N. S. 434, 16 A. D. 175; *Lee et al* v. *Bradlee,* 8 Mart. 55; California Jurisprudence, Vol. 3 p. 549; 20 idem 517 &520; *First National Bank* v. *Clark,* L. R. A. 1016 C 633; 20 R. C. L. 685 *et seq.; Wightman* v. *Evanston Yaryan Co.,* 217 Ill. 371, 75 N. E. 502, 108 A. S. R. 258, 3 Ann. Cas. 1089 y otros casos citados en el alegato del apelante. Se copia una cita del caso de *Smith* v. *Gale* de la Corte Suprema de los Estados Unidos, 36 L. ed. 521, pero no se hizo referencia a la edición oficial. Debe darse énfasis al hecho de que los apelados trataron de establecer su reclamación valiéndose de una simple moción. Los apelados no demostraron tener suficiente interés.

El juez que suscribe cree que debe atribuirse mayor importancia al hecho de que los interventores no tienen derecho alguno sobre la propiedad a virtud de la Ley de Corporaciones. En una lucha de diligencia, el demandante logró embargar primero. Eliminando la Ley de Quiebras, la alegada Ley de Corporaciones, o alguna similar, este embargo confirió a dicho acreedor un gravamen y todas las ventajas conferidas por la ley. Los interventores meramente eran simples acreedores por concepto de contrato, no habiendo adquirido

ningún gravamen o derecho a su favor salvo de acuerdo con la Ley de Corporaciones. Examinémosla.

El artículo 26 de la Ley "para poner en vigor una Ley de Corporaciones Privadas," aprobada el 9 de marzo de 1911, Estatutos Revisados de 1911, página 103, dispone después de la celebración de determinadas reuniones de la junta de directores y los accionistas de la corporación, y de la publicación de ciertas notificaciones, que:

". . . Si en alguna de estas sesiones, dos terceras partes en interés, de todos los accionistas, acordaren que la disolución se lleve a efecto y significaren su consentimiento por escrito, dicho consentimiento, junto con una lista de los nombres y residencias de los directores y oficiales, certificados por el presidente y el secretario o tesorero, se archivará en la oficina del Secretario de Puerto Rico, quien en vista de las pruebas justificativas de haberse llenado los requisitos, otorgará un certificado haciendo constar la presentación y archivo de dicho consentimiento, y la junta directiva hará que el referido certificado se inserte durante cuatro semanas consecutivas, por lo menos una vez cada semana, en un periódico publicado en la Isla de Puerto Rico, y cuando se haya archivado en la oficina del Secretario de Puerto Rico una declaración jurada que acredite haberse publicado el certificado de referencia, quedará disuelta la corporación, procediendo la junta directiva a liquidar los negocios y asuntos de dicha corporación. Si todos los accionistas consintieren por escrito en la disolución, no habrá necesidad de reunión, ni convocatoria, y el Secretario de Puerto Rico otorgará un certificado de disolución a la presentación de dicho consentimiento en su oficina el cual certificado se publicará, según lo anteriormente dispuesto."

Los artículos 27 al 31, inclusive, rezan así:

"Artículo 27.—*Personalidad Jurídica Mientras se Procede a la Disolución.*—Todas las corporaciones, ora cesen en virtud de la limitación fijada en las cláusulas de incorporación, ora queden anuladas por disposición legislativa, o se disuelvan de otro modo, subsistirán como personas jurídicas con capacidad para demandar y ser demandadas y a fin de que puedan liquidar y terminar sus negocios, enajenar y traspasar sus bienes y distribuir su capital; pero no lo serán por lo que respecta a la continuación de los negocios para los cuales fueren establecidas.

"Artículo 28.—*Los Directores Actuarán Como Sínd'cos Durante la Disolución.*—Mientras se procede a la disolución de una corporación en cualquiera forma acordada, los directores actuarán como síndicos liquidadores con amplios poderes para liquidar sus negocios, cobrar los déb'tos pendientes, enajenar y traspasar los valores y demás propiedades entre los accionistas, después de satisfacer sus deudas, hasta donde alcanzaren dichos valores y bienes. Tendrán poder para reunirse y resolver de acuerdo con los estatutos de la corporación y del reglamento que acordare una mayoría de dichos síndicos al objeto de establecer plazos y condiciones para la venta de dichos bienes: podrán vender todos o cualquiera parte de ellos por dinero contante o en parte a plazos; o admitir hipotecas por parte del precio de compra de la totalidad o de cualquiera porción de dichos bienes.

"Artículo 29.—*Facultades y Responsabilidades de los Síndicos Liquidadores.*—Los directores constituídos en síndicos, como queda dicho, tendrán poder para entablar demandas en cobro de dichas deudas y caudales, a nombre de la corporación; y podrán ser demandados en juicio a nombre de la misma, o en sus respectivos nombres como particulares, por las deudas de dicha corporación; y serán mancomunada y separadamente responsables de dichas deudas hasta la cuantía de los fondos y bienes de la corporación que llegaren a su poder como tales síndicos.

"Artículo 30.—*Nombramiento Judicial de Liquidadores.*—Cuando una corporación por cualquier motivo se disolviere, la corte de distrito con jurisdicción sobre el lugar en que radicare su oficina principal en la Isla de Puerto Rico, a solicitud de cualquier acreedor o accionista, podrá en cualquier época, bien disponer que continúen los directores como síndicos, como queda dicho, o nombrar a una o más personas para actuar como liquidadores de dicha corporación y hacerse cargo del activo de la misma, cobrar las deudas y caudales pertenecientes a la corporación, e investirlas de poder para demandar y ser demandadas a nombre de la corporación, o de otro modo promover las acciones necesarias o convenientes al objeto; designar agente o agentes bajo sus órdenes, o ejecutar otros actos que pudiera ejecutar dicha corporación, si existiere, y que fueren necesarios para la l'quidación definitiva de sus negocios no terminados; y los poderes de dichos síndicos o depositarios podrán continuar todo el tiempo que, a juicio de los tribunales, fuere necesario para dicho objeto.

"Artículo 31.—*Distribución del Activo por los Síndicos o Liquidadores.*—Dichos síndicos o liquidadores pagarán a prorrata, hasta

donde alcanzare el activo, a todos los acreedores de la corporación que justificaren sus créditos en la forma prescrita por el tribunal o por la Ley de Enjuiciamiento Civil. Si, después de cubiertas dichas deudas y los gastos indispensables, quedare algún sobrante, éste se distribuirá entre los accionistas.''

Nada hallamos en estas secciones que conceda a los acreedores generales de una corporación disuelta un gravamen o derecho sobre el activo de una corporación sobre el gravamen adquirido a instancias de un acreedor particular. Nada hay en la ley que tienda a destruir el derecho de un acreedor general a embargar los bienes o propiedades de una corporación demandada, a no ser la fraseología del artículo 31 que presupone un procedimiento judicial. Está fuera de disputa que ningún procedimiento judicial tuvo lugar en este caso.

Según la Ley de Quiebras el título de los bienes se pone en manos de un síndico, y el título de éste se retrotrae a una fecha relacionada con la iniciación del procedimiento o algo por el estilo. La cuestión es que el título de los bienes se le quita al quebrado. Igualmente en litigios instituidos por acreedores ante los tribunales de los Estados Unidos en que un acreedor particular pretende obtener ciertos bienes en equidad (*equitable assets*), las cortes insisten en una distribución equitativa o a prorrata entre los acreedores que intervienen.

En una adjudicación para beneficio de los acreedores se efectúa una transferencia similar de título.

Si la Ley de Corporaciones demostró en alguna forma la intención de crear un fondo para beneficio de los acreedores no deberíamos considerar que era necesario un procedimiento judicial para una distribución a prorrata. Por otra parte cuando nada hay en la ley que cree tal fondo para beneficio de los acreedores, la única manera de crearlo es mediante un procedimiento judicial en la forma sugerida por el artículo 31.

El artículo 28 de la ley no crea tal fondo. Meramente

hace que los liquidadores continúen en lugar de la corporación. Siempre debe tenerse presente que no existe la presunción de insolvencia. El deber de los liquidadores es pagar las deudas. Es cierto que las palabras del estatuto son: "hasta donde alcanzaren dichos valores y bienes." Sin embargo, estas palabras son enteramente consistentes con los pagos parciales según se vaya cobrando el activo, y no excluyen el derecho de pagar a un acreedor determinado con preferencia a otro. Debe también recordarse que puede negarse la existencia de determinada reclamación, y hacer que un acreedor pesente pleito.

Tenemos la idea de que bajo tales circunstancias un acreedor tiene derecho a demandar la corporación más bien que a sus liquidadores. De todos modos, ¿debe un acreedor que tiene una reclamación que hacer estar obligado a cerciorarse de si se ha efectuado una disolución voluntaria? Creemos que no, y bajo las circunstancias, el único medio adecuado es la intervención de una corte.

Según hemos indicado anteriormente, cuando el deudor es una corporación nada hallamos que someta a un acreedor general a un derecho o procedimiento distinto al que pudiera adoptar en caso de que se tratara de cualquier otro deudor.

*La resolución apelada debe ser revocada dejando por lo presente intacto el embargo, y debe devolverse el caso a la Corte de Distrito de San Juan para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Señor Hutchison disintió.