C. E. Murray, demandante y apelante, *v.* Tabacaleros de Bayamón, Inc., demandada y apelada; Leopoldo Santiago Carmona, interventor y apelado. Alonso Riera & Cía., Inc., demandante y apelante; *v.* Tabacaleros de Bayamón, Inc., demandada y apelada; Leopoldo Santiago Carmona, interventor y apelado.

Nos. 5104 y 5105.—*Sometidos:* Marzo 18, 1931. *Resueltos:* Marzo 11, 1932.

*Feliú & La Costa,* abogados de los apelantes; *E. Igaravídez,* abogado de los apelados, Tabacaleros de Bayamón, Inc.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Iniciáronse estos pleitos por demandas presentadas por Alonso Riera & Co., Inc., y C. E. Murray contra Tabacaleros de Bayamón, Inc., en cobro de dinero. En ellos intervino Leopoldo Santiago Carmona, almacenista público. La prueba fué la misma para ambos y todas las cuestiones envueltas se consideraron por la corte de distrito en una sola opinión. La vista de las apelaciones se celebró conjuntamente y de igual modo las estudiaremos y resolveremos.

Para asegurar la efectividad de la sentencia que pudiera dictarse a favor de los demandantes, se decretó el embargo de bienes de la demandada Tabacaleros de Bayamón, Inc.,

y cumpliendo la orden de la corte el márshal embargó como de la propiedad de la dicha demandada treinta y nueve barriles de tabaco despalillado, todos marcados y numerados, conteniendo cuarenta y seis quintales y ochenta libras, valorados en $3,276, en el caso de Alonso Riera & Co., Inc., y treinta y un barriles de tabaco despalillado, todos también marcados y numerados, conteniendo treinta y siete quintales veinte libras, valorados en $2,604, en el caso de Murray.

A virtud de ese embargo surgió la intervención, que fué en verdad la que suscitó las cuestiones únicas que hemos de resolver en los recursos. La demandada apelada fué condenada al pago de las sumas reclamadas con una pequeña reducción en uno de los casos, y no apeló, pero el embargo decretado y practicado a instancias de los demandantes fué anulado al resolverse definitivamente la demanda del interventor y los dichos demandantes apelaron para ante este tribunal.

Nueve errores señalan en su alegato, común a ambos recursos: dos relativos a la intervención, cuatro con motivo de la práctica de las pruebas, dos sobre el peso de la evidencia, y el general de haberse cometido grave error al dictarse la sentencia.

Examinemos los dos primeros. Se sostiene por ellos que Santiago Carmona no tenía derecho a intervenir en los pleitos y que las demandas que se le permitió presentar no aducían hechos suficientes para determinar causas de acción.

El interventor alegó que era un almacenista público bajo la Ley No. 36 de 1925, con sus almacenes abiertos en el municipio de Bayamón; que de acuerdo con la ley recibió tabaco de la cosecha de 1926 a 1927 de varios depositantes, sin que ninguno de ellos fuera la demandada Tabacaleros de Bayamón, Inc., y les expidió los recibos correspondientes, quedando así obligado a la entrega inmediata del tabaco a la presentación de dichos recibos que son documentos transmisibles por endoso, habiendo prestado una fianza de veinte mil dólares contra la cual podrían dirigirse según lo dis-

puesto en la ley aquellos a quienes ocasionare perjuicios en el ejercicio de su función de almacenista público; que así las cosas, en estos dos pleitos, el márshal de la Corte de Distrito de San Juan procedió a embargar y embargó como de la propiedad de la demandada sin serlo el tabaco a que al principio de esta opinión nos referimos, incautándose.de él y trasladándolo fuera del almacén público, imposibilitando así al almacenista interventor de cumplir con su deber de entrega a los depositantes o a los tenedores de los recibos de depósito y exponiéndolo a pagar los daños y perjuicios consiguientes. Alegó además que según su información y creencia los recibos que expidiera fueron entregados en prenda al Federal Intermediate Credit Bank of Baltimore.

Las demandas de intervención son más extensas y detalladas, pero el resumen que de ellas dejamos hecho basta para concluir que la corte de distrito no erró al permitir que se radicaran en los pleitos en que se había decretado y practicado el embargo y al resolver luego que aducían hechos suficientes para decretar lo que en ellas se solicitaba, a saber: la nulidad del embargo y la restitución al almacén público del·interventor del tabaco embargado.

Toda la larga discusión que contiene el alegato de los apelantes sobre la interpretación que debe darse al artículo 72 de nuestro Código de Enjuiciamiento Civil, a la existencia en nuestro sistema procesal de los pleitos de ·tercería y a los casos de *Mari* v. *Mari*, 26 D.P.R. 665 y *Lessesne* v. *Porto Rico Drug*, 39 D.P.R. 942, resulta innecesaria después de lo resuelto por esta Corte Suprema en el caso de *Casanova* v. *Carballeira, Juez*, 41 D.P.R. 850. En él se dijo:

"El artículo 72 del Código de Enjuiciamiento Civil dispone lo que sigue:

" 'Cualquiera persona antes de la celebración del juicio podrá intervenir en una acción o procedimiento, si tuviere interés en el asunto en litigio, en el éxito de cualquiera de las partes,, o algún derecho en contra de ambas. Esta intervención tiene lugar cuando a un. tercero se le permita ser parte en la acción o procedimiento

seguido entre otras personas, ya asociándose al demandante para reclamar lo que se pretenda en la demanda, o ya uniéndose al demandado para oponerse a las pretensiones del demandante, o pidiendo algo en sentido adverso a las reclamaciones de demandante y demandado, cuya intervención se efectúa por medio de demanda, exponiendo en ella los motivos en que se funde, presentada con permiso de la corte, y notificada a las partes que no hubieren comparecido y a los abogados de las comparecidas, quienes podrán contestar o alegar una excepción a ella, como si fuese una demanda ordinaria.'

"En Mari v. Mari, 26 D.P.R. 665, la contención fué que un acreedor que tenía un gravamen sobre los bienes embargados no tenía derecho. a intervenir. El recurso de intervención, como remedio del derecho civil, se trazó de Louisiana hasta California, y de este estado fué indirectamente adoptado nuestro estatuto. Este tribunal aceptó la doctrina sentada en 2 R.C.L. 882, de que no sólo existe ese remedio para determinar el dominio de bienes embargados, sino también en favor del que tenga un derecho sobre los mismos. Citamos numerosas autoridades en el mismo sentido, entre ellas, Potlatch v. Runkel, 16 Idaho 192, anotado en 23 L.R.A. (N.S.) 536; el caso de Dennis v. Kolm, 131 Cal. 72, es igualmente aplicable.

"Aunque ninguna de las dos cortes inferiores han descansado en ellos, existen *dicta* en el caso de Lessesne v. Porto Rico Drug, 39 D.P.R. 942, que aparentemente podrían sostener la conclusión a que ellas llegaron en este caso. Sin embargo, la cuestión esencial allí envuelta, según revelan los hechos y las citas, fué que un acreedor no garantizado no tenía derecho a intervenir para recuperar bienes embargados. Nos adherimos a la posición adoptada en Mari v. Mari, supra. Véase además Pabón v. Solivellas, 26 D.P.R. 234. En Potlatch v. Runkel, *supra,* se resolvió que el hecho de que el supuesto interventor tuviera algún otro remedio adecuado para la protección de su derecho no era óbice para su derecho de intervención. Aceptamos ese principio a menos que haya en la Ley de 1907 algo que demuestre la intención total o parcial de derogar el artículo 72 del Código de Enjuiciamiento Civil. Las derogaciones tácitas no son favorecidas. La Ley de 1907, sección 5260 de la Compilación, a este respecto dispone:

"  'Que siempre que un márshal u otro agente judicial, procediere a cumplimentar una orden de ejecución, embargo, o cualquiera otra orden contra alguna propiedad mueble, y dicha propiedad, o cualquiera parte de ella, fuere reclamada por un tercero, éste o su

mandatario o abogado, podrá prestar juramento por escrito ante cualquier funcionario autorizado para tomar juramentos, haciendo constar que dicha reclamación se hace de buena fe, y presentarlo al agente encargado de cumplimentar la orden de ejecución o embargo.'

''Nada hallamos ahí que expresa o aun indirectamente cause la derogación del artículo 72 del Código de Enjuiciamiento Civil. Los dos remedios pueden subsistir juntos.''

El interés del interventor es evidente. La sección 16 de la Ley No. 36 de 1925, o sea de la Ley de Almacenes de Puerto Rico, Leyes de 1925, p. 221, dice:

''Sección 16.—Recibos.—Por todos los productos agrícolas depositados con destino al comercio insular, interestadual o extranjero, el almacenista extenderá recibos originales; pero no se extenderá recibo alguno que no sea por productos agrícolas real y efectivamente depositados en el almacén a la hora de extender dicho recibo.''

Y los artículos pertinentes de la Ley No. 9 de 1918 (p. 23) para hacer uniforme la ley de resguardos de almacenes de depósito, que deberá interpretarse ''de modo que efectúe su propósito general de uniformar la ley de aquellos estados y territorios que la aprobaren'' (art. 57), disponen:

''Artículo 1.—Cualquier depositario podrá expedir resguardos de almacenes de depósito.

''Artículo 5.—El resguardo en el cual constare que las mercaderías recibidas serán entregadas al portador, o a la orden de cualquier persona mencionada en dicho resguardo, es un resguardo negociable.

''''*          *          *          *          *          *          *

''Artículo 37.—Podrá negociarse un resguardo negociable mediante entrega:

''(a) Cuando, por las condiciones del resguardo, el depositario se obliga a entregar la mercancía al portador, o

'':(b) Cuando, por las condiciones del resguardo, el depositario se obliga a entregar la mercancía a la orden de una persona especificada, . . . .

''''*          *          *          *          *          *          *

''Artículo 38.—Un resguardo negociable podrá ser negociado por endoso de la persona a cuya orden, por las condiciones del res-

guardo, puede entregarse la mercancía. Ese endoso podrá ser en blanco, al portador o a una persona especificada . . . .

"Artículo 41.—La persona a quien un resguardo negociable hubiere sido debidamente negociado, adquiere en su virtud:

"(a) El derecho a la mercancía que la persona que le negocia el resguardo tenía o estaba facultada para traspasar a un comprador de buena fe, por valor; . . .

"(b) La obligación directa del depositario de retener la posesión de la mercancía . . . como si el depositario hubiere contratado directamente con ella."

La sección 20 de la Ley No. 36 de 1925 (p. 221), prescribe además:

"Sección 20.—Entrega de productos almacenados.—No existiendo excusa legal, y a solicitud del tenedor de un recibo de productos agrícolas, o del depositante de los mismos, los almacenistas autorizados por esta Ley harán entrega, sin demora innecesaria, de los productos agrícolas que tengan almacenados, siempre que dicha solicitud vaya acompañada (a) de una oferta de satisfacer cualquier reclamación del almacenista; (b) de una oferta de entregar el recibo si fuera negociable, con todos los endosos necesarios para negociarlo; y (c) de la disposición de firmar, al ser entregados los productos, un libramiento declarando que han sido entregados, siempre que el almacenista exija esa firma."

Y el artículo 8 de la Ley No. 9 de 1918:

"Artículo 8.—El depositario, a falta de alguna excusa legal establecida por esta Ley, estará obligado a entregar la mercancía cuando se lo exigiere el tenedor del resguardo correspondiente a la misma o el depositante, siempre que tal requerimiento viniera acompañado de:

"(a) La oferta de satisfacer el gravamen del depositario.

"(b) La oferta de entregar el resguardo, si fuere negociable, con los endosos necesarios para la negociación del mismo; y

"(c) La disposición y voluntad de firmar un recibo a la entrega de la mercancía, si exigiere dicha firma el depositario.

"Caso que el depositario rehusare o dejare de entregar la mercancía en cumplimiento de la demanda que hiciera el tenedor o depositante, acompañada como queda dicho, el peso de establecer la existencia de una razón legal para la negativa recaerá sobre el depositario."

■ Y que el embargo no procedía, lo demuestra lo dispuesto en el artículo 25 de la repetida Ley uniforme de resguardos de almacenes de depósito, No. 9 de 1918, que dispone:

"Artículo 25.—Si la mercancía se entregare a un depositario por el dueño o por una persona cuyo acto al hacer el traspaso de la propiedad a un comprador de buena fe, y por valor, obligaría al dueño, y se expidiere un resguardo negociable por dicha mercancía, no podrá ésta subsiguientemente, mientras estuviera en posesión del depositario, ser embargada en tercería o de otro modo, o mediante orden de ejecución, a menos que primeramente se entregue el resguardo al depositario, o que se haya prohibido judicialmente la negociación del mismo. En ningún caso se obligará al depositario a hacer entrega de la posesión real de la mercancía hasta que se le haya entregado el resguardo o haya sido ocupado por la corte."

La jurisprudencia interpretativa de leyes similares a la nuestra, se ha manifestado como sigue:

"Antes de aprobarse la ley uniforme relativa a almacenes, se estableció que un almacenista, actuando de buena fe, podía entregar los bienes almacenados en cumplimiento de una orden judicial y que al requerírsele los bienes por el depositario o su cesionario, el almacenista podía justificarse con el procedimiento judicial. Pero al deshacerse de bienes de acuerdo con la ley, debe ejercer el mismo cuidado y prudencia que ejercería un hombre prudente cuando se trata del embargo de sus propios bienes, y notificar a todos los interesados del secuestro de la propiedad . . De acuerdo con la ley uniforme sobre recibos de almacenaje, si se ha otorgado un recibo negociable por la mercancía, ésta no está sujeta a ejecución o embargo mientras estuviere en poder del almacenista, a menos que se entregue el recibo o se prohiba, mediante *injunction,* el traspaso del mismo; y no puede obligarse al almacenista que se deshaga de la posesión material de los bienes hasta que se le entregue el recibo o se deposite en la corte. De conformidad con esa ley si el almacenista entrega los bienes en cumplimiento de una orden de embargo sin exigir la entrega del recibo, quizá pueda hacérsele responsable de los mismos por la apropiación ilícita de ellos." 27 R.C.L. 985, 986.

Como muy bien dice el ilustrado juez sentenciador en su relación del caso y opinión:

"De los recibos de almacenes de depósito se hace uso casi exclusivo para garantizar negociaciones de préstamo ó de prenda con garantía de dichos recibos, y éstos, por sí solos, constituyen un símbolo de dicha propiedad, cuya integridad debe sostenerse y mantenerse en todo momento para beneficio de las terceras personas que hubieren contratado con vista de dichos recibos y que fueren poseedoras de los mismos."

Tampoco se cometieron los errores relativos a la práctica de la prueba. Se sostiene por ellos que erró la corte de distrito al admitir una certificación del Comisionado de Agricultura y Trabajo, otra del Secretario Ejecutivo de Puerto Rico, los recibos de depósito y la declaración de Noah Sheppard sobre el hecho de encontrarse los recibos en poder del Intermediate Credit Bank of Baltimore.

Si la única prueba de que el interventor era un almacenista público, y de que Tabacaleros de Bayamón, Inc., era una corporación de esta Isla, hubiera sido las expresadas certificaciones del Comisionado de Agricultura y del Secretario Ejecutivo, quizá tendrían razón los apelantes por la forma en que dichos documentos se encontraban redactados, pero uno y otro hecho aparecen admitidos no ya implícita sino expresamente en los autos por la propia parte que levanta los errores que, en tal virtud, de haberse cometido, resultarían inofensivos.

Los recibos de depósito, expedidos de acuerdo con la ley, eran perfectamente admisibles, y Sheppard, empleado del banco, estaba enteramente capacitado para declarar en la forma en que lo hizo. El alegato de la parte apelada es completo en la contestación que da a los argumentos de los apelantes en relación con estos errores, y detenernos en su examen por escrito sería extender innecesariamente la opinión.

Hemos examinado los hechos declarados probados por la corte sentenciadora y están a nuestro juicio sostenidos por

la prueba. A la mayor parte de ellos nos hemos referido anteriormente al hacer el resumen de las demandas de intervención. Sólo transcribiremos los que siguen para que el caso surja completo de la opinión. Dicen:

"Se ha probado también, que el tabaco en rama depositado por las personas a cuyo nombre están expedidos los 110 recibos mencionados, había sido despalillado bajo la dirección del testigo Francisco Miranda y era el mismo tabaco que se encontraba en los barriles que fueron embargados por el Márshal Sr. Urrutia.

"También se ha probado que, al embargarse los referidos barriles de tabaco despalillado en el almacén de depósito, no se entregaron por el Márshal, ni fueron presentados para su cancelación, los recibos originales de depósito que se habían expedido por el almacenista público (Exhibits 1 al 110 del demandante). El Márshal declaró 'que no vió ninguno de esos recibos'.

"No se ha probado que se hubiera prohibido judicialmente la negociación de dichos recibos, ni que los mismos hubieran sido ocupados por la Corte en ningún momento.

"Se ha probado, además, que Francisco Miranda (encargado del almacén público del interventor), se opuso al embargo, y, a pesar de su oposición, el Márshal lo llevó a cabo."

No erró, pues, la corte al apreciar la prueba. Y como consecuencia general de todo lo expuesto, se concluye que tampoco erró al dictar las sentencias apeladas *que deben confirmarse*.

El Juez Asociado Señor Aldrey está conforme con la sentencia.