José A. Hernández Pérez, demandante y apelante, *v.* Santiago Iglesias Silva, demandado y apelado; y Henry G. Molina St. Remy, interventor y apelado.

Núm. 8156.—*Sometido:* Marzo 19, 1941. *Resuelto:* Abril 3, 1941.

*Francisco González Fagundo,* abogado del apelante; *G. Cruzado Silva,* abogado del demandado apelado; *Henry G. Molina, pro se* y *S. de la Fuente,* abogado del interventor apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Santiago Iglesias Silva y su esposa eran dueños de una finca rústica de 19.40 cuerdas radicada en el barrio Cayaguas, de San Lorenzo, que, entre otras de los mismos dueños, había sido hipotecada a la corporación General Cigar Co., Inc., en garantía de un crédito por la cantidad total de $6,700, a vencer el primero de junio de 1933, respondiendo esta finca de la cantidad de $1,500 de principal, sus intereses y $100 para costas en caso de reclamación judicial.

El 3 de diciembre de 1937, General Cigar Co., Inc. celebró un contrato con Henry G. Molina, formalizado en documento privado suscrito ante el notario Raúl Benedicto, a virtud del cual la primera cedió al segundo todos dichos créditos hipotecarios por precio de $1,225 que la cedente recibió del cesionario, estipulándose en dicho contrato que la primera autorizaba al segundo a instituir a nombre de aquélla

los pleitos que fueren necesarios a fin de hacer efectivos dichos créditos, conviniéndose en que serían de cuenta del Sr. Molina todos los gastos y costas, y quedando relevada la General Cigar Co., Inc. de cualquier responsabilidad que pudiera surgir como consecuencia de tales litigios.

En vez de proceder a ejecutar los créditos hipotecarios, el Sr. Molina convino con Santiago Iglesias Silva en poner en venta la finca de 19.40 cuerdas por precio inferior al montante del crédito de que respondía, ya que su valor no alcanzaba a cubrirlo, en el entendido de que lo que se obtuviese por ella iría a manos del Sr. Molina en satisfacción del crédito de que la finca respondía, obligándose el Sr. Iglesias y su esposa a transmitir directamente a favor del comprador el título de dominio que sobre ella tenían. En armonía con el indicado convenio, el 28 de enero de 1938 Santiago Iglesias Silva y Henry G. Molina de una parte, y de la otra Evaristo Contreras, suscribieron un contrato privado ante el notario Santiago de la Fuente, a virtud del cual se vendía la finca de 19.40 cuerdas a Contreras por precio de $1,000, a pagarse en la siguiente forma: $500 al otorgarse la escritura, y el remanente en dos plazos de $250 cada uno que vencerían respectivamente uno y dos años después de la fecha últimamente aludida. Fué condición de dicho contrato que los Sres. Iglesias y Molina garantizaban al comprador la inscripción de la finca en el registro de la propiedad absolutamente libre de gravámenes.

Con anterioridad a la cesión del crédito al Sr. Molina, la finca en cuestión había sido adjudicada al Pueblo de Puerto Rico en un procedimiento administrativo para el cobro de cierta contribución sobre ingresos adeudada por el Sr. Iglesias. Como dicha contribución sobre ingresos se había devengado con posterioridad a la constitución de la hipoteca a favor de la General Cigar Co., Inc., y por consiguiente no tenía prelación sobre el crédito hipotecario, el Sr. Molina, en cumplimiento del contrato con Contreras y para anular la adjudicación a favor del Pueblo de Puerto Rico, instituyó un

pleito en cobro del crédito hipotecario, a nombre de General Cigar Co., Inc. contra Santiago Iglesias, su esposa y El Pueblo de Puerto Rico, y como consecuencia de dicho pleito obtuvo sentencia a favor de la demandante el 28 de marzo de 1938, por la que, entre otros pronunciamientos, se decretó la nulidad del título del Pueblo de Puerto Rico sobre la finca a que venimos refiriéndonos. Cancelado el título del Pueblo de Puerto Rico en el registro de la propiedad, en vez de celebrarse la subasta de la finca para el pago del crédito hipotecario, optaron General Cigar Co., Inc., Molina e Iglesias por que se cancelara, como en efecto se canceló, el crédito hipotecario, quedando así la finca libre de cargas, a favor de Iglesias y su esposa, quienes a su vez venían obligados a transmitir su título a Contreras, en el entendido de que el precio sería recibido por el Sr. Molina en satisfacción del crédito previamente cancelado para facilitar la transacción. En otras palabras, aunque el título de la finca aparecía en el registro a nombre de Santiago Iglesias y su esposa, su verdadero dueño era el Sr. Molina.

Así las cosas, el 26 de julio de 1938 el Lic. Santiago de la Fuente, de la oficina del Sr. Molina, dirigió una carta al Lic. J. A. Hernández Pérez, acompañándole el mandamiento de la Corte de Distrito de San Juan en el que se ordenaba la cancelación de la inscripción a favor del Pueblo de Puerto Rico y la copia certificada de la escritura de cancelación de hipoteca, invitando a dicho Sr. Hernández Pérez a aconsejar a su cliente, Contreras, que firmase la escritura de compraventa, pagando los $500 de contado según habían convenido, y que inmediatamente tomase posesión de la finca. Contestó el Lic. Hernández Pérez que su cliente no estaba ya en condiciones económicas de cumplir su contrato, y habiendo adquirido dicho Sr. Hernández Pérez un pagaré que por $2,000 había suscrito Santiago Iglesias Silva el 12 de abril de 1932, a vencer el 31 de julio del mismo año, a la orden de Anicasio Rodríguez Montañez, demandó a Iglesias en cobro de dicha obligación el 3 de agosto de 1938,

y para asegurar la efectividad de la sentencia, solicitó y obtuvo el embargo de dicha finca como de la propiedad del demandado Santiago Iglesias Silva.

Precisa ahora consignar que el Lic. Hernández Pérez, con motivo de la relación de abogado y cliente que existía entre él y el Sr. Contreras, había sostenido conferencias con el Sr. Molina y con el propio Sr. Iglesias, y recibido cartas del Sr. Molina que le informaban perfectamente de los convenios y transacciones antes reseñados, y con conocimiento de todo ello, adquirió el pagaré y embargó la finca cuando tenía en su poder la documentación acreditativa de que se hallaba libre de cargas, a nombre del Sr. Iglesias.

Enterado Molina del pleito instituído por Hernández Pérez contra Santiago Iglesias Silva en cobro del pagaré de $2,000, solicitó y obtuvo permiso para intervenir en dicho pleito por el interés que alegaba tener en la finca embargada. Radicó la demanda de intervención, que notificó al demandante Hernández Pérez, pero no así al demandado Iglesias Silva. Excepcionó primero, y desestimada la excepción de falta de hechos constitutivos de causa de acción, contestó Hernández Pérez la demanda de intervención.

En este estado del caso, Santiago Iglesias y su esposa, y Henry G. Molina por su propio derecho y como apoderado de la suya, por escritura núm. 35 de 10 de junio de 1939 ante el notario Santiago de la Fuente, vendieron la finca de 19.40 cuerdas a Juan Muñoz por precio de $1,000, de los cuales recibió el Sr. Molina la cantidad de $600 al otorgarse la escritura y el remanente también lo recibió el mismo Sr. Molina en un pagaré al portador garantizado con hipoteca sobre la finca vendida. En la escritura se expresó que el precio lo recibía el Sr. Molina "en su carácter de dueño de la finca." Se consignó además como condición esencial de la venta que la finca era vendida libre de carga o gravamen y que si alguno aparecía en el registro de la propiedad, los vendedores se obligaban a procurar su cancelación, a cuyo efecto tendrían un término razonable.

El 14 de julio de 1939, o sea poco más de un mes después de vendida la finca, se celebró el juicio en el incidente de intervención y el 2 de octubre siguiente recayó sentencia decretando la nulidad del embargo trabado en el pleito principal, imponiendo las costas al demandado en intervención, J. Hernández Pérez, y condenándole a pagar al interventor la cantidad de $100 por concepto de honorarios de abogado. Fué contra esta sentencia que estableció Hernández Pérez el presente recurso.

Alega el apelante que la corte inferior erró al celebrar la vista del incidente de intervención y dictar sentencia sin que antes hubiera sido notificado el demandado Iglesias con copia de la demanda de intervención y sin haberse resuelto el pleito principal.

En verdad el Sr. Iglesias no fué notificado con copia de la demanda de intervención. Muy fácil hubiera sido notificarlo; pero, ¿era el Sr. Iglesias una parte necesaria o indispensable para que la corte pudiese llegar a una completa resolución de la controversia en el incidente de intervención? Si no era parte necesaria o indispensable, no erró la corte al proceder a celebrar el juicio. Artículo 74, Código de Enjuiciamiento Civil. Iglesias no era en nuestra opinión una parte indispensable cuya ausencia de los autos impidiese resolver completamente la controversia. En la demanda de intervención ningún remedio se solicitaba contra él. El único propósito de dicha demanda era que se decretase la nulidad del embargo trabado sobre una finca que el propio Iglesias había vendido un mes antes del juicio y sobre la cual, por consiguiente, no tenía interés, y la sentencia dictada al resolver completamente la controversia ningún pronunciamiento contenía contra él. Por lo tanto, actuó la corte en perfecta armonía con el citado artículo 74, dispositivo de que "la corte podrá resolver cualquier controversia entre las partes, siempre que fuere posible hacerlo sin perjudicar los intereses de otros, . . ." Quizá sería oportuno consignar aquí que hasta la fecha el Sr. Iglesias no ha protestado en manera

alguna de que no se le hiciera parte en el procedimiento de intervención, a pesar de que el día del juicio se hallaba en corte, según se consignó en la transcripción de evidencia.

¿Era necesario o indispensable para que la corte pudiese dictar sentencia en el incidente de intervención que se hubiese resuelto previamente el pleito principal? El procedimiento seguido por el Sr. Molina no era el de tercería, cuyo artículo 14 contiene una disposición a ese efecto. Ningún precepto legal existe en nuestros estatutos que exija ese requisito en los casos de intervención. Gran parte de su alegato dedica el apelante a esta cuestión, tratando de demostrar que al procedimiento de intervención son aplicables los preceptos de la ley de tercería, incurriendo así en el lamentable error de confundir ambos procedimientos. Hace diez años que este tribunal, en el caso de *Casanovas v. Carballeira, Juez,* 41 D.P.R. 850, 852, dejó establecido que el remedio de intervención contenido en el artículo 72 del Código de Enjuiciamiento Civil y la ley de tercería son dos remedios distintos que pueden subsistir independientemente y que el hecho de que el supuesto vendedor tenga algún otro remedio adecuado para la protección de su derecho no es óbice para que pueda recurrir a la intervención. El caso de *Casanovas,* supra, fué citado con aprobación en *Murray v. Tabacaleros de Bayamón, Inc.,* 43 D.P.R. 210, 212, en el de *Benítez v. Tabacaleros, etc.,* y *Fed. Int. Credit Bank,* 50 D.P.R. 791, 795, y por último en el más reciente de *Reyes & Pagán v. Corte,* 52 D.P.R. 654, 656, citado por el propio apelante. Y al resolver este tribunal que el hecho de que el interventor pueda hacer uso del remedio de tercería no es óbice para el ejercicio de su derecho de intervención, no erró, sino que siguió la interpretación que al artículo 72 se le ha dado en California, de donde se tomó ese precepto legal, y donde, al igual que en el Estado de Idaho (Art. 4111, Revised Codes) —que también lo tomó de California—, se ha resuelto que el hecho de que el interventor tenga algún otro remedio adecuado para la protección de su derecho no es óbice para que

pueda recurrir al remedio de intervención. *Coffey* v. *Greenfield*, 55 Cal. 382; *Bogue* v. *Roeth* (Cal.) 276 P. 1071; *Elms* v. *Elms,* 52 P. (2) 223; 20 Cal. Jur. 521; y *Potlach Lumber Co.* v. *Runkel,* 16 Idaho 192, anotado en 23 A.L.R. (N.S.) 536.

██ En el tercer y cuarto señalamientos de error se alega que la sentencia es contraria a derecho y a la prueba y que la corte erró al admitir en evidencia el contrato de 3 de diciembre de 1937 celebrado por la General Cigar Co., Inc. y el Lic. Henry G. Molina, autorizado por *affidavit* núm. 2420 ante el Notario Raúl Benedicto.

Argumentando el tercer error, se dice que la sentencia es contraria a derecho porque no han sido oídas todas las partes, refiriéndose a Santiago Iglesias, y que es contraria a la prueba porque el embargo fué trabado el 3 de agosto de 1938 y no aparece de la prueba que con anterioridad a esa fecha Henry G. Molina tuviese título alguno que determinara que la finca embargada era de su exclusiva propiedad. Nada tenemos que agregar a lo dicho con respecto a la falta de notificación a Iglesias. Es verdad que la cesión de los créditos hipotecarios a favor de Molina no se hizo por escritura pública, pero ello no es óbice para que él adquiriese título sobre dichos créditos. "Los contratos se perfeccionan por el mero consentimiento y desde entonces obligan no sólo al cumplimiento de lo expresamente pactado sino también a todas sus consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley," prescribe el artículo 1210 de nuestro Código Civil. Concedemos que "la cesión de un crédito, derecho o acción," conforme dispone el artículo 1416 del Código Civil (ed. 1930), *"no surtirá efecto contra tercero . . .* si se refiere a un inmueble, sino desde la fecha de su inscripción en el registro." Pero ¿acaso puede Hernández Pérez alegar la condición de tercero en este caso? Se ha sostenido repetidamente por este tribunal que un acreedor por embargo no puede perjudicar los derechos del comprador perfeccionados con arreglo a la ley antes de trabarse

el embargo aunque a la fecha de la anotación no se hubiera cumplido la formalidad de elevar dicho contrato a escritura pública. *Vélez* v. *Camacho,* 8 D.P.R. 37, 45. Véanse además *Solá* v. *Morera,* 7 D.P.R. 7; *Fernández* v. *Márquez & Co.,* 3 D.P.R. 210 (2a. ed.).

Con anterioridad a la fecha del embargo, Molina, para llevar a efecto el contrato con Contreras, había cancelado la hipoteca cedídale por General Cigar Co., Inc., pero no obstante, de acuerdo con lo pactado con Iglesias, Molina era el verdadero dueño de la finca, a pesar de que ésta se hallaba inscrita a nombre de Iglesias, pues conforme prescribe el artículo 1339 del Código Civil (ed. 1930), ''la venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato y en el precio, aunque ni la una ni la otra se hayan entregado.'' Esta transacción la conocía Hernández.

■ No hay duda alguna de que si Iglesias se hubiese negado a reconocer el título de Molina, éste hubiese podido obligarlo a otorgar la escritura mediante la acción correspondiente, de acuerdo con el artículo 1339 del Código Civil antes citado; y si el título de Molina era válido con respecto a Iglesias, necesariamente tenía que serlo con respecto a Hernández, que por ser un mero acreedor de Iglesias no podía adquirir sobre los bienes de éste más derechos que los que tenía su deudor. Pero aparte de estas consideraciones, tampoco podía Hernández Pérez ser considerado tercero en este caso, puesto que él tenía conocimiento personal aun mucho antes de adquirir el pagaré, de los derechos que sobre la finca tenía Molina, y es elemental en esta jurisdicción que no puede considerarse tercero aquél que tiene conocimiento al adquirir el inmueble de las cargas que lo afectaban, aunque no haya intervenido en el contrato inscrito. *Valdés* v. *Valle,* 1 D.P.R. 75; *Carmona* v. *Cuesta,* 18 D.P.R. 180.

■ Cuando Molina estableció su demanda de intervención, tenía, como hemos visto, el título de dueño sobre la

finca, aunque dicho título no había sido elevado a escritura pública y esto le daba suficiente interés para poder presentar la demanda de intervención. Es verdad que cuando se celebró el juicio la finca había sido vendida a Juan Muñoz, pero no es menos cierto que en la escritura de venta se constituyó una hipoteca para garantizar un pagaré al portador por $400, entregado al Sr. Molina según consta de la referida escritura, núm. 35 de 10 de junio de 1939 ante el Notario Santiago de la Fuente, escritura que fué presentada en evidencia por el propio apelante.

El contrato privado de 3 de diciembre de 1937 por el cual fueron cedidos los créditos hipotecarios a favor del Sr. Molina era claramente admisible en evidencia pues como hemos visto era un documento válido y no siendo Hernández Pérez tercero, no podía impugnar su validez.

*Procede, por lo expuesto, desestimar el recurso y confirmar la sentencia apelada.*