Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| IG Builders Corp.<br>Integra Group Corp.<br><br>Recurridas<br><br>v.<br><br>577 Headquarters Corp.<br><br>Recurrido<br><br><br>Banco Bilbao Vizcaya Argentaria<br><br>Peticionario | Certiorari<br><br>2012 TSPR 66<br><br>185 DPR ____ |

Número del Caso: CC-2011-862


Fecha: 4 de abril de 2012


Tribunal de Apelaciones:

      Región Judicial de San Juan Panel III


Abogados de la Parte Peticionaria:

      Lcdo. Charles Bimbela Quiñones
      Lcda. María L. Montalvo Vera
      Lcda. Luz C. Molinelli González


Abogado de la Parte Recurrida:

      Lcdo. Pedro Rosario Urdaz
      Lcdo. Jorge L. M. Cintrón Pabón


Materia: Incumplimiento de Contrato, Cobro de Dinero


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| IG BUILDERS CORP.; INTEGRA GROUP CORP. | | *Certiorari* |
|---|---|---|
| Recurridas | | |
| v. | | |
| 577 HEADQUARTERS CORP. | **Núm.: <u>CC-2011-0862</u>** | |
| Recurrido | | |
| BANCO BILBAO VIZCAYA ARGENTARIA | | |
| Peticionario | | |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 4 de abril de 2012.

El antiguo procedimiento de tercería, según incorporado a la actual Regla 21.5 de Procedimiento Civil de 2009 atinente a la intervención,[1] nos sirve de marco para definir la discreción conferida al Tribunal de Apelaciones (TA) para decidir cuándo expedir un recurso de *certiorari* conforme la Regla 52.1 de Procedimiento Civil de 2009.[2] De igual manera, nos toca resolver si la controversia, según planteada en el caso ante el foro de instancia, resultaba académica en la etapa original de los procedimientos judiciales.

---

[1] 32 L.P.R.A. Ap. V, R. 21.5 (2010) (Regla 21.5).

[2] 32 L.P.R.A. Ap. V, R. 52.1 (Supl. 2011) (Regla 52.1).

I

En noviembre de 2004 el Banco Bilbao Vizcaya Argentaria Puerto Rico (BBVAPR o el peticionario) pactó con 577 Headquarters, Corp. (577HQ) el financiamiento para la compra y remodelación de un inmueble sito en Hato Rey, Puerto Rico. Como colateral al préstamo ascendente a una cantidad en exceso de seis millones de dólares ($6,000,000.00), se constituyeron varias hipotecas a favor del BBVAPR y se ofrecieron garantías personales de los nuevos dueños del inmueble. Igualmente, las partes suscribieron un documento titulado *Assignment of Lessor's Interest in Leases* mediante el cual 577HQ cedió al BBVAPR las sumas recibidas del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Departamento del Trabajo) en calidad de cánones de arrendamiento correspondientes a la propiedad recién adquirida.

Para fines de la remodelación del inmueble, 577HQ contrató con Integra Group Corp. (Integra), en calidad de arquitecto, y con IG Builders Group, Corp. (IG Builders), como contratista general. Así las cosas, el 8 de marzo de 2010 Integra e IG Builders (los recurridos) presentaron ante el Tribunal de Primera Instancia (TPI) una Demanda sobre Incumplimiento de Contrato, Cobro de Dinero y Daños en contra de 577HQ, alegando la falta de pago por sus gestiones profesionales en relación al referido inmueble. El 8 de septiembre de 2010 las partes en el pleito

llegaron a un acuerdo transaccional ante el TPI que disponía de la reclamación antes mencionada. Mediante dicho convenio, 577HQ accedió pagar a Integra e IG Builders la suma total de dos millones doscientos treinta y seis mil trescientos veinticinco dólares con veinte centavos ($2,236,325.20).

La transacción antes mencionada se incorporó en una Sentencia dictada en el caso. Habida cuenta de que 577HQ no cumplió con los pagos según pactado y a solicitud de los recurridos, el TPI dictó una Orden el 30 de noviembre de 2010 decretando el aseguramiento de la Sentencia emitida, mediante el embargo de bienes propiedad de 577HQ ascendentes a dos millones doscientos treinta y seis mil trescientos veinticinco dólares con veinte centavos ($2,236,325.20). La correspondiente Orden de Embargo le fue notificada al Departamento del Trabajo, en calidad de arrendatario de 577HQ, el 21 de julio de 2011.

En cumplimiento con lo decretado por el TPI, el Departamento del Trabajo consignó, inicialmente, la cantidad de ciento sesenta y seis mil seiscientos trece dólares con treinta y cuatro centavos ($166,613.34) en el tribunal.[3] En vista de ello, los recurridos presentaron dos (2) mociones solicitando el retiro de los fondos, con fecha de 19 y 26 de agosto de 2011, respectivamente. Ambas mociones fueron declaradas *Ha Lugar* por el TPI

---

[3] Véase *Orden Enmendada* expedida por el TPI el 28 de septiembre de 2011, ordenando la transferencia de dicha cantidad de la cuenta de la Secretaría Regional a la cuenta del Alguacil Regional.

mediante *Orden* emitida el 8 de septiembre de 2011, a la vez que ordenó a la Unidad de Cuentas del TPI a expedir los cheques correspondientes a favor de los recurridos por la suma total de ciento sesenta y seis mil seiscientos trece dólares con treinta y cuatro centavos ($166,613.34), consignada por el Departamento del Trabajo.

El 13 de septiembre de 2011 el BBVAPR presentó una moción ante el TPI en la que cuestionó el embargo promovido por los recurridos. Alegó tener un derecho propietario preferente sobre los bienes embargados a 577HQ en virtud de la cesión de los cánones de arrendamiento antes mencionada. Solicitó al TPI, además, que suspendiese todo desembolso de los fondos consignados por el Departamento del Trabajo hasta tanto se dilucidaran los méritos de su planteamiento.

El 16 de septiembre de 2011 el TPI denegó la solicitud del peticionario por considerarla académica indicando, a esos efectos, que "los fondos consignados ya fueron dispuestos mediante Orden de retiro el 8 de septiembre de 2011".

El 20 de septiembre de 2011, el BBVAPR sometió una *Urgente Moción de Reconsideración y para que se Deje sin Efecto Orden de Retiro de 8 de septiembre de 2011.* Mediante la misma, solicitó al tribunal que permitiese su intervención y se denegase la solicitud de orden de embargo en lo atinente a los dineros depositados judicialmente por el Departamento del Trabajo, por

alegadamente tener derecho prioritario sobre dichos fondos. En su moción, el peticionario específicamente le indicó al foro primario que la Orden de 8 de septiembre de 2011, aún no había sido ejecutada. Es decir, que para esa fecha todavía los cheques correspondientes a los dineros consignados no habían sido remitidos a la parte recurrida.

El 21 de septiembre de 2011 el TPI le solicitó a la División de Cuentas que certificase el balance de la cuenta y el nombre del titular de la misma. No obstante, la moción de reconsideración de BBVAPR fue declarada *No Ha Lugar* el 26 de septiembre de 2011.

El 27 de septiembre de 2011 el Departamento del Trabajo presentó una *Segunda Moción de Consignación*[4] por la cantidad total de doscientos noventa y siete mil cuatrocientos cuatro dólares con setenta y nueve centavos ($297,404.79).[5] En esa misma fecha, los recurridos presentaron una *Moción Solicitando Retiro de Fondos, Depósito por $297,404.79.* No consta en récord que el TPI haya dispuesto de esta última solicitud. De hecho, según se refleja del Informe de Subsidiario de la Cuenta del Alguacil (Informe de Subsidiario)[6] en el caso de epígrafe,

---

[4]    El Departamento del Trabajo trató infructuosamente de consignar estas cantidades el 19 de septiembre de 2011, pero los cheques no fueron aceptados debido a que estaban expedidos a nombre de 577HQ.

[5]    Esta cantidad concierne al canon arrendatario correspondiente a abril de 2011 y unos balances pendientes de mayo y junio 2011, así como el canon arrendatario de los meses de septiembre, octubre y noviembre de 2011. La renta mensual ascendía a ochenta y tres mil trescientos seis dólares con sesenta y siete centavos ($83,306.67).

[6]    Informe solicitado a la División de Cuentas del TPI.

al 26 de octubre de 2011 aún quedaba un balance de doscientos noventa y siete mil cuatrocientos cuatro dólares con setenta y nueve centavos ($297,404.79) correspondiente al embargo.

Mediante *Orden Enmendada* expedida por el TPI el 28 de septiembre de 2011, se transfirieron los ciento sesenta y seis mil seiscientos trece dólares con treinta y cuatro centavos ($166,613.34), erróneamente consignados por el Departamento del Trabajo en la cuenta de la Secretaría Regional, a la cuenta del Alguacil Regional por corresponder a fondos producto de un embargo.

Asimismo, surge del Informe de Subsidiario que no fue hasta el 30 de septiembre de 2011 que se expidieron dos (2) cheques a favor de Integra e IG Builders por un total de ciento sesenta y seis mil seiscientos trece dólares con treinta y cuatro centavos ($166,613.34), equivalente a la totalidad del primer depósito del Departamento del Trabajo según decretado en la Orden del 8 de septiembre de 2011.

El 7 de octubre de 2011 el BBVAPR sometió para la consideración del TA una petición de *certiorari* acompañada por una *Moción en Auxilio de Jurisdicción*.

Mediante Resolución de 21 de octubre de 2011, el TA denegó la expedición del recurso, así como la moción solicitando la paralización de los procedimientos ante el foro de instancia por entender que la solicitud de intervención del peticionario había advenido académica, una vez el tribunal *a quo* ordenó el desembolso de los

fondos embargados. Opinó, a su vez, que el recurso no se ajustaba a ninguna de las alternativas jurisdiccionales provistas en la Regla 52.1, como tampoco cumplía con ninguno de los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 40 (Supl. 2011), para la expedición del auto de *certiorari*.

Inconforme, el BBVAPR recurrió ante este Foro donde presentó un recurso de *certiorari* conjuntamente con una *Moción Solicitando Orden en Auxilio de Jurisdicción*. Mediante Resolución de 31 de octubre de 2011, declaramos ésta última *Ha Lugar*,**7** a la vez que le concedimos un término a las partes recurridas para mostrar causa por la cual no debíamos revocar la determinación recurrida.

El 21 de noviembre de 2011 los recurridos nos solicitaron la desestimación del recurso, a la vez que presentaron su Alegato en cumplimiento con nuestra Resolución. El 2 de diciembre de 2011 el BBVAPR se opuso a la desestimación. Resolvemos.

## II

### MOCIÓN DE DESESTIMACIÓN

La parte recurrida plantea tres (3) argumentos en apoyo a su solicitud de desestimación. Inicialmente, aduce que el BBVAPR carecía de legitimación activa para intervenir en el caso en instancia por no tener un interés

---

**7** De esta forma, paralizamos los procedimientos ante el TPI impidiendo así desembolsos adicionales de los dineros consignados.

propietario que defender. En la alternativa, argumenta que, debido a que ya se había ordenado el primer desembolso de los dineros embargados, el asunto advino académico. A esos efectos, sostiene que no existe reclamación justiciable, pues "no se puede impedir un desembolso que ya ocurrió". Por último, advierte que la controversia atinente a los fondos producto del segundo depósito aún no se encuentra madura para disposición judicial, puesto que el BBVAPR no le ha solicitado al TPI que dichos fondos le sean entregados. No procede la desestimación del recurso según intimado.

Primeramente, la alegada falta de legitimación activa está predicada en el cuestionamiento interpuesto por los recurridos al derecho utilizado por el peticionario como fundamento para reclamar prioridad en el cobro. No obstante, dado el escenario procesal en que se suscita esta controversia corresponde al TPI, en primera instancia, pasar juicio sobre el alcance del contrato entre el BBVAPR y 577HQ y determinar, a base de ello, la jerarquía que concierne a los derechos allí acordados frente a los reclamos de los recurridos en calidad de acreedores por sentencia.

En cuanto a los otros dos (2) planteamientos señalados en la solicitud de desestimación atinentes a la madurez y academicidad de la causa de acción del BBVAPR, decretamos que, conforme lo discutimos en detalle más

adelante al disponer de los errores señalados en el recurso de *certiorari,* tampoco proceden.

Por consiguiente, declaramos *No Ha Lugar* la *Moción de Desestimación* sometida por los recurridos.

**III**

Los errores esgrimidos por el peticionario en su recurso se reducen, inicialmente, a cuestionar la determinación del TA al resolver que la controversia en el presente recurso, es decir su solicitud de intervención en el litigio, no está contemplada entre las categorías de incidentes procesales particularizados en la Regla 52.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 52.1 (Supl. 2011) (Regla 52.1). De otra parte, aduce el BBVAPR que erraron tanto el foro primario como el TA al concluir que su solicitud de intervención había advenido académica debido a que los fondos consignados habían sido previamente dispuestos mediante Orden de retiro expedida el 8 de septiembre de 2011.

Antes de adentrarnos en los contornos de la discreción judicial referente al recurso de *certiorari,* según consignado en el primer error, es menester dilucidar el estado de derecho aplicable a solicitudes de intervención dirigidas a ejercitar derechos sobre propiedad embargada o en vías de ejecución de sentencia según provisto en la Regla 21.5 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 21.5 (2010) (Regla 21.5). De otra parte, precisa examinar los argumentos atinentes a la

doctrina de academicidad según se tornan relevantes a los hechos del caso.

## IV

### INTERVENCIÓN

Los orígenes de la intervención en un litigio, según provisto en nuestro ordenamiento procesal, se sitúan en el antiguo Artículo 72 de los Códigos de Enjuiciamiento Civil de 1904 y de 1933 (Artículo 72).[8] Más tarde, se incorporó el concepto de intervención a la Regla 24 de las Reglas de Enjuiciamiento Civil de 1943 hasta que, eventualmente, se renumeró la Regla 24 como la Regla 21 de Procedimiento Civil de 1958.[9] Chase Manhattan Bank v. Nesglo, Inc., 111 D.P.R. 767, 769 (1981). Como veremos, en las revisiones integrales sobrevenidas a nuestro esquema procesal

---

[8]    El Artículo 72, según recogido en el Código de Enjuiciamiento Civil de 1933, disponía lo siguiente:

> Cualquiera persona antes de la celebración del juicio podrá intervenir en una acción o procedimiento, si tuviere interés en el asunto en litigio, en el éxito de cualquiera de las partes, o algún derecho en contra de ambas. Esta intervención tiene lugar cuando a un tercero se le permita ser parte en la acción o procedimiento seguido entre otras personas, ya asociándose al demandante para reclamar lo que se pretenda en la demanda, o ya uniéndose al demandado para oponerse a las pretensiones del demandante, o pidiendo algo en sentido adverso a las reclamaciones de demandante y demandado, cuya intervención se efectúa por medio de demanda, exponiendo en ella los motivos en que se funde, presentada con permiso de la corte, y notificada a las partes que no hubieren comparecido y a los abogados de las comparecidas, quienes podrán contestar o alegar una excepción a ella, como si fuese una demanda ordinaria.

32 L.P.R.A. sec. 322 (1955).

[9]    En su artículo sobre el tema de la intervención, el Profesor Richard B. Capalli hace un recuento exhaustivo del desarrollo de esta medida procesal a la vez que intercala sus recomendaciones para futuras enmiendas cónsonas con la trayectoria procesal federal. R. B. Capalli, "The Guest Who Came to Dinner: Intervention Practice in Puerto Rico Civil Procedure", 40 Rev. Jur. U.P.R. 461 (1971).

efectuadas en los años 1979 y 2009, respectivamente, los criterios correspondientes al proceso de intervención en los casos continúan siendo pautados por la Regla 21 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 21 (2010) (Regla 21).

La intervención constituye un vehículo de gran utilidad y de uso común en los tribunales. A través del mecanismo provisto en la Regla 21, se faculta la comparecencia de un tercero en una acción judicial previamente instada. No obstante, queda claramente establecido que esta regla constituye meramente un instrumento procesal y, por lo tanto, no es fuente de derechos sustantivos ni establece causa de acción alguna. "Es simplemente una disposición mediante la cual una persona que no es parte en el pleito comparece, voluntariamente o por necesidad, a presentar una reclamación o defensa, en una acción pendiente, y convertirse de ese modo en parte para fines de la reclamación o defensa presentada." J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Publicaciones J.T.S., Tomo II, 2011, pág. 779.

El esquema provisto mediante la figura de la intervención procura alcanzar un balance entre la economía procesal lograda al atenderse diversos asuntos de manera conjunta, contrapuesto con la necesidad de que los casos concluyan en un tiempo razonable. S.L.G. Ortiz Alvarado v. Great American Life Assurance Co. of P.R., 2011

T.S.P.R. 79, 182 D.P.R. ___ (2011); Chase Manhattan Bank v. Nesglo Inc., *supra*, a la pág. 770. Por lo tanto, la Regla 21 conlleva en su aplicación un análisis de índole pragmático más que conceptual. S.L.G. Ortiz Alvarado v. Great American Life Assurance Co. of P.R., *supra*; R. Mix Concrete v. R. Arellano & Co., 110 D.P.R. 869, 873 (1981). "Por ello, a la hora de evaluar una solicitud de intervención, debemos analizar primero si existe de hecho un interés que amerite protección y segundo, si ese interés quedaría afectado, como cuestión práctica, por la ausencia del interventor en el caso." S.L.G. Ortiz Alvarado v. Great American Life Assurance Co. of P.R., *supra*; Chase Manhattan Bank v. Nesglo Inc., *supra*, a la pág. 770.

De otra parte, aunque las disposiciones atinentes a la intervención deben interpretarse desde una perspectiva liberal, no por ello corresponde refrendar su uso ilimitado fallando en toda instancia a favor de la intervención. Rivera v. Morales, 149 D.P.R. 672, 689 (1999); Chase Manhattan Bank v. Nesglo Inc., *supra*, a la pág. 770.

Al presente, la Regla 21 rige todos los asuntos en materia de la intervención en procesos judiciales. A su vez, dicha disposición procesal se compone de siete (7) subsecciones, cada una de las cuales atiende un aspecto particular del proceso. Para propósitos de este caso, nos ceñimos a repasar sólo aquellos acápites que guardan

relación con las controversias planteadas conjuntamente con su evolución histórica.

A estos efectos, comenzamos con el examen de la Regla 21.1 de Procedimiento Civil de 2009, la cual provee lo siguiente para aquellas instancias en las cuales la intervención procede como cuestión de derecho:

> Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito:
>
> (a) Cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir, o
>
> (b) Cuando la persona solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pueda, de hecho, quedar afectado con la disposición final del pleito.

32 L.P.R.A. Ap. V, R. 21.1 (2010).

Continuando en el orden acostumbrado, pasamos entonces a estudiar la logística para su implantación establecida a través de la Regla 21.4 de Procedimiento Civil de 2009.[10] En su aspecto práctico, el proceso de intervención comienza con una solicitud al tribunal mediante la cual la parte interesada deberá exponer aquellos fundamentos que justifican su injerencia en el procedimiento. Dicha solicitud deberá ir acompañada con la alegación correspondiente a la reclamación o defensa que se pretende proseguir en el caso.

---

[10]    32 L.P.R.A. Ap. V, R. 21.4 (2010).

Las Reglas 21.5, 21.6 y 21.7 de Procedimiento Civil de 2009,[11] por su parte, provienen de la extinta Ley de Tercería.[12] Veamos.

### A. LEY DE TERCERÍA

El procedimiento de tercería se introdujo a nuestro ordenamiento mediante la Ley de Tercería aprobada en el año 1907.[13] Dicho estatuto, el cual estuvo vigente hasta la adopción de las Reglas de Procedimiento Civil de 1979, surgió como parte de "un esfuerzo para hermanar los artículos sobre tercería del enjuiciamiento civil español, con los artículos sobre la misma materia en el enjuiciamiento civil de California, formando un nuevo cuerpo insuflado con las fuerzas vitales y la esencia de ambas legislaciones, adaptado al moderno sistema de enjuiciar". R. Atiles Moreu, El Recurso de Tercería en el

---

[11]    32 L.P.R.A. Ap. V, Rs. 21.5, 21.6 y 21.7 (2010).

[12]    Aprobada el 14 de marzo de 1907, 32 L.P.R.A. secs. 1171-1190 (1968).

[13]    A pesar de que la Ley de Tercería aparecía publicada entre las disposiciones de los Códigos de Enjuiciamiento Civil de 1904 y 1933, no por ello estaba incorporada ni formó parte de este cuerpo estatutario. Véase Ocasio González & Co. v. Corte de Distrito, 38 D.P.R. 7, 8 (1928).

El explicación para ello nos la brinda el jurista Rafael Atiles Moreu de la siguiente manera:

> En la desorientación que precedió a la aprobación de los códigos del 1904 – aprobados en forma festinada e inconsulta -, olvid[o]se legislar sobre la materia de tercerías, lo que intent[o]se subsanar mediante la promulgación de la ley de tercerías de marzo 14, 1907, enmendada en marzo 12, 1908.

R. Atiles Moreu, El Recurso de Tercería en el Derecho Procesal Vigente, 5 Rev. Jur. U.P.R. 360 (1935-1936). En este artículo el autor nos presenta un relato minucioso y exhaustivo de los orígenes y el desarrollo de las disposiciones de la Ley de Tercería incorporadas a nuestro sistema de derecho.

*Derecho Procesal Vigente*, 5 Rev. Jur. U.P.R. 360, 361 (1935-1936).

En su acepción más amplia, la tercería implica la potestad dispensada a un tercero que reclama tener el dominio o mejor derecho sobre un bien embargado judicialmente o sujeto a ejecución, de levantar el embargo o detener la ejecución, a la vez que le solicita al tribunal que resuelva el asunto del alegado dominio o preferencia sobre dichos bienes.

"Las tercerías se fundan o en el dominio de los bienes embargados al deudor, o en el derecho del tercero a ser reintegrado de su crédito con preferencia al del acreedor de la acción principal." *Hernández Acosta v. Corte de Distrito*, 34 D.P.R. 679, 681 (1925).

Así pues, hemos explicado que "cabe la tercería de mejor derecho cuando surge un conflicto entre ciudadanos con respecto a su mejor derecho a hacer efectivos sus créditos en determinados bienes de un deudor común…". *Trueba v. Zalduondo*, 34 D.P.R. 743, 745 (1925). "El procedimiento de tercería tiene por objeto principal determinar de una manera rápida, pero con garantía para todas las partes interesadas, si los bienes muebles que se han embargado como de determinada persona le pertenecen a otra que los reclama como suyos." *Rona Electric Co. v. Garriga*, 99 D.P.R. 942, 949 (1971).

La tercería, según originalmente instituida en el año 1903, operaba de la siguiente manera: Una persona que

reclamase tener un derecho sobre propiedad mueble sujeta a embargo o ejecución, venía obligada simplemente a someterle al funcionario a cargo de cumplimentar la orden de ejecución o embargo un escrito bajo juramento certificando que su reclamación se hacía de buena fe y a prestar la fianza correspondiente. Una vez cumplidos estos dos (2) requisitos, se le entregaba la propiedad al reclamante en *custodia legis* hasta tanto el tribunal dispusiere otra cosa. Mientras tanto, el alguacil o la persona responsable de aceptar la fianza, venía obligada a remitir los documentos antes mencionados al tribunal que había dictado la orden de ejecución o embargo. Una vez recibidos el juramento y la fianza, el Secretario del Tribunal procedía a anotarlo en el libro de causas y a notificar a las partes concernidas para que compareciesen ante el juez en un término de diez (10) días. Luego de la comparecencia de las partes, el tribunal decretaba que se formulase la cuestión por escrito y posteriormente se celebraba una vista para dilucidar el asunto. En aquellos casos en que no comparecía el tercerista, se desestimaba la demanda por abandono de la acción. Por otro lado, de ser la parte contraria la no compareciente, se le anotaba la rebeldía. Excepto en estos últimos dos (2) supuestos, el juez a cargo venía obligado a reservar su fallo atinente a la tercería, hasta tanto se dictase sentencia en el procedimiento que dio motivo a la tercería.

A pesar de que en sus inicios la tercería se pautó únicamente para casos de bienes muebles, al año siguiente de la aprobación de la Ley de Tercería se legisló para proveer un mecanismo que rigiera igualmente a situaciones en que estuviesen envueltos bienes inmuebles. Mediante dicho estatuto, aprobado el 12 de marzo de 1908 y denominado "Ley para Proveer el Procedimiento en los Casos de Tercería sobre Bienes Inmuebles", se adicionó el Artículo 6(a) a la normativa entonces vigente. El mismo prescribió que las tercerías respecto a bienes inmuebles debían de iniciarse mediante demanda contra todas las personas con interés en el asunto. Se dispuso, además, que en este tipo de tercerías "sólo podrá suspender el tercerista una orden de ejecución para el trámite de subasta mediante interdicto prohibitorio (injunction)…". 32 L.P.R.A. sec. 1187 (1968).

### B. LA TERCERÍA Y LA INTERVENCIÓN CONFORME AL ARTÍCULO 72

De otra parte, cabe notar que durante la vigencia de la Ley de Tercería se dictaminó jurisprudencialmente que conforme las disposiciones del Artículo 72 tanto los que reclamasen el título o dominio, como los tenedores de gravámenes que recayesen sobre propiedades envueltas en un litigio, o cuyos derechos pudiesen verse afectados por una sentencia, tenían derecho a intervenir en los procedimientos judiciales correspondientes.

En <u>Mari v. Mari y The Royal Bank of Canada</u>, 26 D.P.R. 665 (1918), reconocimos por primera vez el derecho de un reclamante que alegaba tener un gravamen preferente sobre bienes embargados a intervenir en un pleito ya iniciado. De este modo, ratificamos el uso de la intervención provista en el Artículo 72 como método alterno a la tercería para escrutar la prioridad de los derechos invocados por un tercero sobre propiedad embargada. Igualmente, en <u>Estrada v. Corte Municipal</u>, 50 D.P.R. 480 (1936), permitimos darle curso a una demanda de intervención para disponer del alegado traspaso de un terreno previo a su embargo.

A través de los años, ratificamos también el derecho de un reclamante a intervenir en un pleito pendiente en el que se ordenó un embargo sobre bienes que éste reclamaba como suyos. <u>Reyes & Pagán v. Corte</u>, 52 D.P.R. 654 (1938); <u>Benítez v. Tabacaleros y Fed. Int. Credit Bank</u>, 50 D.P.R. 791 (1936); <u>Casanova v. Carballeira, Juez</u>, 41 D.P.R. 850 (1931).

Cónsono con lo anterior, resolvimos que la Ley de Tercería dejó incólume el Artículo 72. Así pues, hemos expresamente decretado que "[l]os dos remedios pueden subsistir juntos". <u>Íd.</u> a la pág. 852. Véanse, además, <u>Hernández v. Iglesias</u>, 58 D.P.R. 406 (1941); <u>Murray v. Tabacaleros de Bayamón, Inc.</u>, 43 D.P.R. 210 (1932).

A esos efectos, reiteradamente dispusimos que "el remedio de intervención existente en el derecho civil e

incorporado a nuestro derecho procesal al adoptarse las disposiciones del Código de California sobre la materia, puede ser utilizado por el que reclame como suya una propiedad embargada como perteneciente a otra persona o por el que reclame cualquier gravamen o derecho sobre la propiedad embargada; y que el hecho de que el interventor pueda hacer uso del remedio de tercería no es óbice para el ejercicio de su derecho de intervención". Reyes & Pagán v. Corte, *supra*, a la pág. 657 y casos allí citados. "[E]l hecho de que [una] misma cuestión haya podido resolverse también en una demanda de tercería, no es óbice para que la corte inferior pudiera resolverla por medio de una simple demanda de intervención, teniendo como tenía jurisdicción sobre todas las partes interesadas y sobre la propiedad envuelta en la controversia." Benítez v. Tabacaleros y Fed. Int. Credit Bank, *supra*, a la pág. 797.

A base de lo anterior, podemos colegir que el antiguo procedimiento de tercería y la intervención originalmente dispuesta en el Artículo 72 no resultaban sinónimos. Aunque ambos procedimientos estaban basados en controversias comunes, el mecanismo disponible a través de cada uno de ellos resultaba diferente. Diferían entre sí ambos esquemas en que este último estaba predicado en la participación directa de un reclamante que busca ser incluido como parte en una acción principal que ya discurría judicialmente. Ahora bien, la tercería consistía en un procedimiento judicial separado donde el

tribunal venía únicamente llamado a esgrimir una controversia - ya sea sobre el título o dominio o la preminencia de los derechos del tercero - atinente a una propiedad objeto de embargo o ejecución.

En _Borinquen Trading Corp. v. Corte de Dist. de San Juan_, 32 D.P.R. 199 (1923), abundando sobre estas diferencias expresamos lo siguiente:

> La aparente confusión en este caso parece que proviene de la relación que trata de establecer el peticionario entre una acción principal y un incidente de tercería. Este incidente no es una intervención del tercero en la materia en litigio del caso principal para proteger sus derechos en el sentido del artículo 72 del Código de Enjuiciamiento Civil, sino la introducción de una nueva cuestión litigiosa separada e independiente.

_Íd._ a las págs. 200-201.

### C. LA INTERVENCIÓN CONFORME A LA REGLA 21.5

En el año 1979, por recomendación del Comité Procesal Civil, se derogó la Ley de Tercería y, en su lugar, se agregó la Regla 21.5 a nuestro ordenamiento procesal. Como fundamento para ello, dicho organismo explicó que el uso del mecanismo de tercería había mermado en los procesos judiciales a favor de la intervención, por proveer esta última un método más ágil y sencillo para resolver las controversias planteadas en este tipo de asunto. Habida cuenta de que la intervención permitía igualmente atender reclamaciones atinentes a derechos sobre bienes embargados, entendieron sus miembros que se

hacía innecesario dejar vigente el proceso alterno de tercería. Así pues, expusieron las siguientes razones para justificar el cambio recomendado:

> La práctica actualmente… es utilizar el procedimiento establecido en la Regla 21 sobre intervención con preferencia sobre el antiguo procedimiento establecido en la Ley de Tercería, por ser aquél más simple y rápido…. [L]a intervención, cuyo interés estriba en los bienes embargados, hace las veces de una tercería y se prefiere como remedio porque su campo de acción es más amplio y es un remedio más expedito. Siendo ello así, ante la realidad de que el procedimiento bajo las disposiciones de la Regla 21 de las de Procedimiento Civil puede ser utilizado con iguales fines que la Ley de Tercería y el mismo resulta más rápido y efectivo, recomendamos se derogue la actual Ley de Tercería, y se adicionen a la Regla 21 las disposiciones necesarias para complementar la misma en lo relacionado con terceros interventores que reclamen bienes embargados. De este modo, se simplifica el procedimiento y se hace más acorde a la filosofía que inspira nuestro derecho procesal civil.

"Informe sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico" preparado por el Comité Procesal Civil en el año 1976, a las págs. 356-357.

La Regla 21.5, la cual no ha sufrido cambio significativo alguno desde que fue aprobada originalmente en el año 1979, en la actualidad, dispone como sigue:

> Siempre que un alguacil o alguacila proceda a cumplimentar una orden de ejecución de embargo o cualquier otra orden contra alguna propiedad mueble o inmueble, y dicha propiedad o cualquier parte de ella, o algún interés en ella, sea reclamada por un tercero, éste tendrá derecho a presentar una demanda de intervención. El

procedimiento de intervención relacionado con bienes muebles e inmuebles se regirá por estas reglas.

En la versión de las Reglas de Procedimiento Civil de 1979 también se añadieron las Reglas 21.6 y 21.7, disponiendo éstas para la entrega provisional de los bienes embargados a un interventor, así como las condiciones atinentes a la fianza exigible en estos supuestos.[14] El Comité Procesal Civil reconoció que el método provisto en la Ley de Tercería resultaba deficiente, puesto que todo lo relacionado al monto y prestación de la fianza recaía exclusivamente en manos del alguacil. Se legisló, por tanto, para asegurar la participación judicial en esta fase del proceso cónsono con las otras fianzas exigidas por nuestro ordenamiento procesal.

En torno a la moción para la entrega de los bienes embargados, al presente la Regla 21.6 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 21.6 (2010) (Regla 21.6), dispone lo siguiente:

> En aquellos casos en que la parte interventora desee obtener la posesión de la propiedad embargada, deberá presentar una moción al efecto, la cual se resolverá ofreciendo a las partes la oportunidad de una vista para expresarse sobre la solicitud del (de la) interventor(a). Si se declara "con lugar" dicha

---

[14] Cabe señalar que la versión inicialmente incorporada en las Reglas 21.5 a la 21.7, conforme a las enmiendas del año 1979, y ahora parte de las reglas aprobadas en el año 2009, no corresponden a ninguna disposición previa en nuestro ordenamiento procesal o en las reglas federales. Notamos, además, que desde su aprobación en el año 1979, ambas reglas únicamente han sufrido enmiendas mínimas.

moción, la parte interventora deberá prestar fianza por el importe del embargo más cualquier otra suma que el tribunal estime apropiada para garantizar los derechos a la parte afectada como condición para recuperar la posesión de dicha propiedad.

Por su parte, las condiciones de la fianza se encuentran fijadas en la Regla 21.7 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 21.7 (2010) (Regla 21.7), la cual, en la actualidad, provee como sigue:

> La fianza se constituirá con la condición de que si la parte reclamante no logra justificar su derecho, devolverá la propiedad al(a la) funcionario(a) que haya efectuado el embargo, al(a la) sucesor(a) de éste o al(a la) depositario(a) de los bienes, y deberá responder por cualquier deterioro o menoscabo que haya sufrido la propiedad, incluso por su pérdida total. Asimismo, la parte reclamante satisfará cualquier otra compensación que el tribunal estime justa y razonable, si ésta procede según los hechos específicos del caso.

> Si la parte reclamante logra justificar su derecho, se cancelará la fianza.

Como puede apreciarse, ambas disposiciones transcritas anteriormente trazan, a grandes rasgos, el procedimiento previamente dispuesto en la Ley de Tercería atemperado a las exigencias de nuestro esquema procesal. Al igual que lo anteriormente dispuesto en el estatuto derogado, se le permite a un tercero solicitar la devolución de propiedad embargada, así como su entrega mediante la prestación de la fianza correspondiente. No obstante, a diferencia de la antigua tercería, se provee

para la intervención directa en un proceso judicial que ya discurre.

El mecanismo de intervención establecido mediante la Regla 21.5, antes citada, se distingue en que ésta se encuentra disponible a una parte ajena al caso aun luego de dictada sentencia en el pleito. Ésta sirve como vehículo procesal a un tercero, extraño al litigio original, para someter a la consideración del tribunal una controversia relacionada con un interés o derecho que pretende ostentar sobre la propiedad que en su día se proyecta ejecutar para hacer efectiva la sentencia.

> Los procesos al amparo de esta regla versan sobre incidentes en un pleito incoado previamente entre otros litigantes, en el cual comparece un tercero que alega tener algún interés o derecho sobre la propiedad mueble o inmueble cuando un alguacil procede a cumplimentar una orden de ejecución, embargo o cualquier otra orden contra la propiedad….

J. A. Cuevas Segarra, op. cit. a la pág. 806.

> Esta Regla 21.5, como su antecesora, están predicadas bajo la premisa que cuando en la etapa posterior al juicio se suscita un conflicto sobre la titularidad reclamada con la propiedad que había sido embargada y en la etapa de ejecución era objeto de subasta o había sido objeto de una subasta judicial, para resolver este conflicto es necesario la presentación de una demanda contra todas las personas que tengan interés en el asunto para dirimir el conflicto de titularidad….

J. A. Cuevas Segarra, op. cit. a la pág. 807.

Queda claro pues que, a diferencia de las otras modalidades contempladas en la Regla 21, la intervención

provista en la Regla 21.5 no guarda relación con la controversia principal suscitada entre un demandante y la parte demandada. Más bien, la reclamación del interventor se circunscribe a salvaguardar aquellos derechos atinentes a la propiedad embargada o sujeta a algún dictamen judicial para responder por la sentencia dictada o que se pueda dictar en su día en el pleito inicial.

De otra parte, advertimos que la Regla 21.5 está redactada en términos mandatorios. Por lo tanto, según surge claramente de su texto, la intervención provista mediante esta disposición procede como cuestión de derecho en aquellas situaciones en que un tercero invoque tener un derecho o interés preferencial sobre una propiedad que haya sido objeto de una orden de embargo u otro decreto judicial. Véase, además, Aponte v. Román, 145 D.P.R. 477, 486 (1998) (Sentencia); Progressive Finance v. LSM Gen. Const., 144 D.P.R. 796, 803 (1998) ("Esa intervención… se produjo al amparo de la Regla 21.5… que como *cuestión de derecho absoluto siempre* la autoriza cuando se embarga una propiedad perteneciente, o con interés, de un tercero.") (Opinión concurrente del Juez Asociado señor Negrón García) (Énfasis en original).

Paralelamente, la Regla 21.6 entra en juego cuando el reclamante desee, igualmente, obtener la posesión de la propiedad embargada mientras se ventila su derecho sobre la misma. "La regla [21.6], como es de notarse, aplica únicamente a las intervenciones permitidas por la Regla

21.5." J. A. Cuevas Segarra, op. cit. a la pág. 809. Conforme a lo provisto en dicha norma procesal, el interesado deberá presentar una moción a tales efectos, "la cual se resolverá ofreciendo a las partes la oportunidad de una vista para expresarse sobre la solicitud…". Regla 21.6. En la eventualidad de que el tribunal acceda a la petición, vendrá obligado el interventor tercerista, previo a recuperar la posesión de dicha propiedad, a prestar una fianza que cubra no solamente el monto del embargo sino que, además, garantice los derechos de la parte afectada.

Por su parte, la Regla 21.7 provee el mecanismo para la disposición de los bienes embargados y recuperados transitoriamente por el interventor, una vez ha concluido el procedimiento para adjudicar el derecho reclamado por éste. En la eventualidad de que el interventor, luego de recuperar pendente lite la posesión de la propiedad embargada, no pueda justificar su derecho sobre la misma, vendrá obligado a devolverla al funcionario responsable del embargo. Responderá, además, por cualquier deterioro que haya sufrido dicha propiedad, así como cualquier otra compensación que proceda. Sin embargo, de justificar su derecho sobre la propiedad embargada, se cancelará la fianza y la mantendrá en su posesión.

Aclarada la normativa relevante al derecho de intervención dispuesto en la Regla 21.5, procedemos a aplicarla a los hechos del caso.

En este recurso no existe controversia sobre la trayectoria de los fondos embargados en virtud del mandato judicial para hacer efectiva la Sentencia previamente dictada a favor de los recurridos. De otra parte, si bien es cierto que al momento del BBVAPR solicitar intervención en el litigio el tribunal *a quo* ya había ordenado el desembolso de los fondos, no es menos cierto que el dinero permanecía aún bajo la custodia del tribunal. Tanto es así, que el 28 de septiembre de 2011, transcurrido al menos una semana desde que las solicitudes de reconsideración y de intervención fuesen sometidas, el TPI ordenó la transferencia de los fondos consignados por el Departamento del Trabajo de la cuenta de la Secretaría Regional a la cuenta del Alguacil Regional. De hecho, no fue sino hasta dos (2) días más tarde, es decir, el 30 de septiembre de 2011, que el Alguacil Regional finalmente expidió los cheques a nombre de los recurridos.

La intervención solicitada conforme la Regla 21.5, al igual que el procedimiento de tercería, van dirigidos ya sea a levantar un embargo trabado por una orden judicial o a detener la ejecución de una sentencia a base de los derechos reclamados por el interventor sobre la propiedad afectada. Resulta axiomático, por lo tanto, que dicha regla es de aplicación, inclusive en casos donde se haya dictado sentencia en el pleito y en el que se pretende intervenir.

**Conforme al claro mandato de la Regla 21.5, una vez presentado *prima facie* un alegado derecho sobre la propiedad embargada, el TPI no tiene discreción para rechazar una intervención de un tercero que alega tal interés.** En este caso, el BBVAPR reclamó un derecho prioritario sobre las rentas consignadas por el Departamento del Trabajo, a la vez que le solicitó al tribunal que dilucidara la controversia suscitada sobre a cuál de las partes concernidas correspondía el dinero. Quiere esto decir que, en ese preciso instante, como asunto de estricto derecho procesal, la intervención del BBVAPR resultaba mandatoria. Por consiguiente, los méritos de la reclamación interpuesta por el peticionario frente a las objeciones presentadas por los recurridos quedaban para ulteriores procedimientos.

La solicitud de intervención en este caso hizo alusión específica al contrato de cesión de rentas celebrado entre el peticionario y 577HQ, lo que preliminarmente resultaba suficiente para propósitos de la Regla 21.5. Si el derecho reclamado por el BBVAPR era o no válido, o si en efecto, tenía prioridad sobre el de la parte embargante, quedaba para dilucidarse en otro momento. No podemos perder de vista que es esa precisamente la razón de ser de la Regla 21.5. Constituye un vehículo procesal creado concretamente para ventilar controversias donde se pone en juego la titularidad o

mejor derecho sobre una propiedad embargada o en vías de ejecución.

Resolvemos, por tanto, que como cuestión de derecho y conforme lo provisto en la Regla 21.5, el BBVAPR tenía la opción de intervenir en el caso instado por los recurridos en contra de 577HQ.

**V**

**ACADEMICIDAD**

Igualmente, coincidimos con la posición del peticionario a los efectos de que, al momento en que éste solicitó intervención en el caso de cobro de dinero de los recurridos, su petición no resultaba académica.

La jurisdicción de los tribunales se encuentra circunscrita a casos justiciables. Es decir, está ceñida a aquellas situaciones en que estén presentes controversias reales y vivas susceptibles de adjudicación por el tribunal y donde éste imparta un remedio que repercuta en la relación jurídica de las partes ante sí. Torres Santiago v. Depto. Justicia, 181 D.P.R. 969, 982-983 (2011); Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 931 (2011); U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 279-280 (2010); Lozada Tirado v. Testigos Jehová, 177 D.P.R. 893, 907-908 (2010). Entre las doctrinas que han emergido dentro de los lindes de justiciabilidad se encuentra la de academicidad. Torres Santiago v. Depto. Justicia, *supra*; Lozada Tirado v. Testigos Jehová, *supra*, a la pág. 908.

Un caso se torna académico cuando ocurren cambios en su trámite, ya sea en los hechos o en el derecho, que convierten la controversia en una inexistente, de manera tal que el dictamen que tuviera a bien emitir el tribunal no tendría efecto práctico sobre las partes. Torres Santiago v. Depto. Justicia, *supra*; Asoc. Fotoperiodistas v. Rivera Schatz, *supra,* a la pág. 932; U.P.R. v. Laborde Torres y otros I, *supra,* a la pág. 280; Lozada Tirado v. Testigos Jehová, *supra*, a la pág. 908.

No obstante, se han reconocido ciertas excepciones a la doctrina de academicidad que permiten la intervención judicial aun cuando el asunto planteado aparenta haberse tornado académico. Así pues, se autoriza a los tribunales a entender en aquellos casos en los cuales se plantea una cuestión recurrente, o susceptible de repetición, y capaz de evadir la revisión judicial; cuando el demandado ha modificado la situación de hechos, pero el cambio no aparenta ser permanente, y cuando algunos aspectos de la controversia se han tornado académicos, pero persisten importantes efectos colaterales. Torres Santiago v. Depto. Justicia, *supra*; Asoc. Fotoperiodistas v. Rivera Schatz, *supra,* a la pág. 933; U.P.R. v. Laborde Torres y otros I, *supra,* a la pág. 281; Lozada Tirado v. Testigos Jehová, *supra*, a la pág. 908.

Diferimos de la determinación del TPI, que luego fuera avalada por el TA, a los efectos de que la solicitud

de intervención de la parte peticionaria no procedía por ser académica.

La controversia planteada por el BBVAPR a través de su solicitud de intervención de 20 de septiembre de 2011, giraba en torno a su alegado derecho prioritario sobre las rentas consignadas por el Departamento del Trabajo en respuesta al Mandamiento de Embargo. Según expusimos anteriormente, para esa fecha el foro primario aún tenía custodia y control sobre estos fondos. Notamos que, como parte de los procesos judiciales, este dato era de fácil constatación por parte del tribunal al momento de considerar la solicitud del BBVAPR. De hecho, el 28 de septiembre de 2011 el TPI decretó la transferencia de los fondos a la cuenta del Alguacil Regional y los fondos no fueron desembolsados hasta el 30 de septiembre de 2011.

No cabe duda de que los planteamientos sometidos a través de la fallida intervención del BBVAPR denotaban controversias reales y vivas susceptibles de adjudicación por el tribunal. Conforme a la reclamación aducida, quedaba por resolver a cuál de los adversarios en el debate sobre los fondos le correspondía recibir las rentas pagadas y consignadas por el Departamento del Trabajo. De igual forma, es lógico pensar, como en efecto ocurrió, que continuarían surgiendo los embargos promovidos por los recurridos hasta satisfacer la totalidad de la deuda por Sentencia a su favor, que sobrepasaba los dos millones de

dólares ($2,000,000.00). Ciertamente, la controversia era capaz de repetición ante el TPI.

Resolvemos, por tanto, que incidieron ambos foros al coincidir en que la causa de acción vertida en la solicitud de intervención sometida por el BBVAPR era académica.

## VI
## REGLA 52.1 — *CERTIORARI*

Pasamos ahora a considerar si la Resolución del TA, la cual confirmó el dictamen del TPI, y advirtió que el asunto planteado en el recurso instado por el BBVAPR no tenía cabida bajo ninguno de los incisos de la Regla 52.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 52.1 (Supl. 2011) (Regla 52.1), ni bajo las disposiciones de la Regla 40 de su Reglamento, *supra*, resulta acertada.

Según aprobada en el año 2009, la Regla 52.1 alteró sustancialmente el enfoque prácticamente irrestricto característico de la revisión interlocutoria de las órdenes y resoluciones emitidas por el TPI hasta entonces vigente, dando paso a uno mucho más limitado. De esta manera, se pretendió atender los inconvenientes asociados con la dilación que el antiguo esquema ocasionaba en los procedimientos, así como la incertidumbre que se suscitaba entre las partes del litigio. Se entendió que, en su mayor parte, las determinaciones interlocutorias podían esperar hasta la conclusión final del caso para ser revisadas en apelación, conjuntamente con la sentencia

dictada en el pleito. De igual forma, con el propósito de acelerar el trámite ante el foro apelativo intermedio, a través de la nueva regla se preceptuó que en los casos en que se denegase la expedición del recurso de *certiorari* no sería necesario que el tribunal expusiera sus razones para tal determinación. Véase <u>Rivera Figueroa v. Joe's European Shop</u>, 2011 T.S.P.R. 179, 182 D.P.R. ___ (2011).

La Regla 52.1 fijó de manera taxativa los asuntos aptos para revisión interlocutoria por el TA mediante el recurso de *certiorari*. No obstante, al año siguiente a su aprobación, fue necesario expandir la potestad conferida a dicho foro para abordar también situaciones no previstas en la versión original de la regla, pero que ameritaban la intervención adelantada del foro revisor, ya fuese por su naturaleza o el efecto producido a las partes.

Cónsono con lo anterior, se aprobó la Ley 177-2010 mediante la cual se adicionaron dos (2) nuevos preceptos a las categorías inicialmente dispuestas para revisión bajo la Regla 52.1. Así pues, se extendió la facultad de presentar recursos de *certiorari* para revisar también aquellas órdenes o resoluciones interlocutorias dictadas por el TPI que involucren asuntos de interés público o que presenten situaciones que demanden la atención inmediata del foro revisor, pues aguardar hasta la conclusión final del caso conllevaría un "fracaso irremediable de la justicia".

En lo pertinente al recurso de autos, la Regla 52.1 hoy vigente, en su parte pertinente, dispone lo siguiente:

....

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57… o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, **en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.** Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

....

(Énfasis nuestro).

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. Pueblo v. Díaz de León, 176 D.P.R. 913, 917 (2009); García v. Padró, 165 D.P.R. 324, 334 (2005).

La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto discreción necesariamente implica la facultad de elegir entre diversas opciones. "Sin embargo, en el

ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho…. Es decir, *discreción* es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera." Pueblo v. Rivera Santiago, 176 D.P.R. 559, 580 (2009) (énfasis en el original y citas omitidas); Torres Martínez v. Torres Ghigliotty, 175 D.P.R. 83, 98 (2008); García v. Padró, *supra*, a las págs. 334-335.

Cabe señalar, no obstante, que la discreción judicial "no se da en un vacío ni en ausencia de otros parámetros". Rivera Figueroa v. Joe's European Shop, *supra*. En el caso particular del TA, sus oficios se encuentran enmarcados dentro de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, los cuales pautan para la expedición del auto de *certiorari*. Así pues, para poder ejercer sabiamente su facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, el precepto antes mencionado dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

La Regla 40, *supra*, adquiere mayor relevancia en situaciones como la presente en que, de ordinario, no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque

ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia.

Es por ello que venía obligado el TA a atender con rigurosidad la denegatoria del TPI de la solicitud de intervención del BBVAPR para, de este modo, procurar evitar un fracaso de la justicia.[15] A estos efectos notamos que en este caso en particular, a pesar de contar con el derecho de intervención a su favor, a la parte peticionaria se le cerraron las puertas del tribunal sin brindarle la oportunidad de presentar evidencia a favor de su alegado derecho preferente sobre las rentas en cuestión.

De otra parte, según explicamos anteriormente, aunque se había ordenado el desembolso de los fondos con anterioridad a la solicitud de intervención, no por ello había perdido el foro primario su facultad para resolver la cuestión planteada por el peticionario.

Por último, cabe notar que, tal como ocurrió en este caso, la situación de aquéllos que intervienen en un litigio apoyados en el derecho contemplado en la Regla 21.5 se agrava puesto que, al no ser parte del pleito original, no existe un mecanismo concreto para notificarle de los embargos o de la consignación de fondos. Así pues, a menos que se le permitiese plantear su posición formalmente en los procesos judiciales, podría perpetuarse

---

[15] Véase la Regla 40 (G) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 40 (G) (Supl. 2011).

lo sucedido a nivel de instancia sin que el BBVAPR pudiese lograr que el TPI dilucidara su reclamación.

Resolvemos, por tanto, que el tribunal apelativo intermedio no cumplió con su cometido de sopesar el efecto que tendría el éste negarse a revisar la resolución impugnada, conforme a lo dispuesto tanto en nuestro ordenamiento procesal como en la reglamentación aplicable. Ciertamente, el no expedir el auto de *certiorari* bajo las circunstancias presentes en este caso, resultó en un fracaso de la justicia. Se le impidió al peticionario toda oportunidad de revisión de la determinación recurrida y de ventilar sus derechos sobre los dineros embargados.

## VII

Decretamos, por tanto, que erró el TA al negarse a expedir el recurso de *certiorari* solicitado y, de este modo, validar la denegatoria de intervención según fuese sometida por el peticionario ante el TPI conforme la Regla 21.5.

Corresponde en primera instancia al TPI pasar juicio sobre el alcance del contrato entre el BBVAPR y 577HQ, así como determinar la jerarquía que corresponde a los derechos allí acordados, frente a los derechos de los recurridos en calidad de acreedores por sentencia.

A base de lo antes expuesto, se expide el auto de *certiorari* según solicitado. Se revoca la Resolución del TA con fecha del 21 de octubre de 2011 y se devuelve el caso al TPI para que se autorice la intervención del

BBVAPR y oportunamente resuelva las controversias atinentes a quién tiene derecho prioritario sobre los dineros embargados en cobro de la sentencia emitida a favor de los recurridos.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| IG BUILDERS CORP.; INTEGRA GROUP CORP. | | *Certiorari* |
| Recurridas | | |
| v. | | |
| 577 HEADQUARTERS CORP. | **Núm.: CC-2011-0862** | |
| Recurrido | | |
| BANCO BILBAO VIZCAYA ARGENTARIA | | |
| Peticionario | | |

SENTENCIA

En San Juan, Puerto Rico, a 4 de abril de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos que erró el Tribunal de Apelaciones (TA) al negarse a expedir el recurso de *certiorari* solicitado y, de este modo, validar la denegatoria de intervención según fuese sometida por el peticionario ante el Tribunal de Primera Instancia (TPI) conforme la Regla 21.5 de Procedimiento Civil de 2009.

Corresponde en primera instancia al TPI pasar juicio sobre el alcance del contrato entre el Banco Bilbao Vizcaya Argentaria Puerto Rico (BBVAPR) y 577 Headquarters, Corp., así como determinar la jerarquía que corresponde a los derechos allí acordados, frente a los derechos de los recurridos en calidad de acreedores por sentencia.

A base de lo antes expuesto, se expide el auto de *certiorari* según solicitado. Se revoca la Resolución del TA con fecha del 21 de octubre de 2011 y se devuelve el caso al TPI para que se autorice la intervención del BBVAPR y oportunamente resuelva las controversias

atinentes a quién tiene derecho prioritario sobre los dineros embargados en cobro de la sentencia emitida a favor de los recurridos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren sin opinión escrita.


Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina